365 F.2d 439
 2 A.L.R.Fed. 558
 A. OLINICK & SONS, Plaintiff-Petitioner,
v.
DEMPSTER BROTHERS, INC., Defendant-Respondent.
A. OLINICK & SONS, Petitioner,
v.
Honorable Matthew T. ABRUZZO, United States District Judge,
Eastern District of New York, Respondent.
 Docket 30296.
 United States Court of Appeals Second Circuit.
 Argued Feb. 21, 1966.
Decided Aug. 8, 1966.
 
 Golenbock & Barell, New York City (Leonard W. Wagman, Jerome Schlapik, New York City, and Irvin Rothfarb, New York City, of counsel), for the plaintiff-petitioner.
 Donovan, Leisure, Newton & Irvine, New York City (George S. Leisure, Jr. and James M. Bergen, New York City, of counsel), for defendant-respondent.
 Before WATERMAN, MOORE and FRIENDLY, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 In this case, a plaintiff whose case has been ordered transferred under 28 U.S.C. 1404(a) from the Eastern District of New York to the Eastern District of Tennessee seeks to obtain review of the order of transfer. The motion papers present the following picture.
 
 
 2
 Plaintiff, A. Olinick & Sons (Olinick), is a family partnership engaged in the scrap metal business in Brooklyn. Defendant, Dempster Brothers, Inc. (Dempster), is a Tennessee corporation with its principal place of business in Knoxville, Tennessee, engaged in the manufacture and sale of hydraulically operated equipment, including scrap metal processors. It has never qualified to do business in New York State and maintained no office, telephone listing, or salesmen in the state. According to the affidavits before the District Court, Dempster had 447 employees on August 16, 1965; Olinick had 12 employees on September 30, 1965.
 
 
 3
 In February 1962, having heard of the virtues of Dempster's products from a manufacturer's representative, two Olinick partners, Oscar and David Olinick, went down to Knoxville to investigate the possibility of ordering a large 'baler shear' which would both compress and cut scrap metal. Olinick agreed to buy the machine for a total purchase price of $135,000, after negotiations in part in Knoxville and in part by phone and mail between Knoxville and Brooklyn. The parts were delivered in the early part of 1963 and were assembled in Brooklyn by employees of Dempster, working together with employees of Olinick.
 
 
 4
 From the first use of the machine, Olinick complained that it was defective: that it was not made to specifications, that it did not handle the capacity of scrap originally anticipated, and that it broke down with distressing regularity. On several occasions Dempster sent teams of servicemen to Brooklyn to work on the machine. In January 1963, David and Oscar Olinick went to Knoxville, together with a lawyer from Cincinnati, to discuss the problem with Dempster. Dempster offered to reduce the price of the machine to $35,000, the amount Olinick had already paid. According to Dempster, Olinick agreed to this, provided that Dempster would agree to furnish further parts for the machine. According to Olinick, no agreement was reached in Knoxville, except that Dempster experts were to go to Brooklyn to discuss what could be done to salvage the machine. In any case, Dempster experts did go to Brooklyn and did agree on a list of parts and information to be furnished to Olinick. Dempster's counsel in Tennessee then drafted a proposed settlement agreement which formed the basis of an agreement between the parties, signed by Dempster in Tennessee and, on February 25, 1964, by Olinick, apparently in Brooklyn.
 
 
 5
 On July 12, 1965, Olinick brought suit against Dempster in the Supreme Court of New York, County of Kings, seeking damages in the amount of $500,000 for breach of warranty, negligence and failure to perform, all grounded on alleged defects in the machine which 'were the result of the negligent design, manufacture, assembly, and inspection thereof by Dempster.' In addition the complaint requested the rescission of the agreement of February 25, 1964, on the grounds that at the time of its execution Dempster had fraudulently failed to disclose the existence of certain grave defects in the machine known by Dempster but not readily discoverable; or, in the alternative, for $300,000 in damages for failure by Dempster to perform the repairs promised under the agreement of February 25, 1964.
 
 
 6
 Dempster removed the action to the District Court for the Eastern District of New York and moved that the case be transferred to the Eastern District of Tennessee, Northern Division (at Knoxville), pursuant to 28 U.S.C. 1404(a). After hearing oral argument on two occasions and considering affidavits, supplemental affidavits, and memoranda of law, the District Court ordered the case transferred, pointing out among other factors that the defense expected to call more witnesses, and that the case would proceed to trial far more quickly in the Eastern District of Tennessee than in the Eastern District of New York. The District Court certified in the manner prescribed by 28 U.S.C. 1292(b) that it considered the case appropriate for interlocutory appeal. Olinick now seeks review from the order of transfer, either by way of an interlocutory appeal under 28 U.S.C. 1292(b), or by way of mandamus.
 
 1. The Mode of Review
 
 7
 A threshold question is whether the proper mode of review is by interlocutory appeal or by mandamus. The difference between the two is not necessarily large. Under each, the Court of Appeals has total discretion-- akin to that exercised by the Supreme Court on petitions for certiorari-- in deciding whether or not to permit review. E.g., In re Josephson, 218 F.2d 174, 183 (1st Cir. 1954); S.Rep. No. 2434, 85th Cong., 2d Sess., 1958 U.S.Code Cong. and Admin.News, p. 5257. Although in mandamus the trial court is named as a party, where the writ is sought simply to review the merits of its transfer order, its participation is purely nominal. See Rapp v. Van Dusen,350 F.2d 806 (3d Cir. 1965). Moreover, the scope of judicial review under the two procedures may be very much the same. See Humble Oil & Ref. Co. v. Bell Marine Serv. Inc., 321 F.2d 53, 56-57 (5th Cir. 1963).
 
 
 8
 Nevertheless, litigants aggrieved by the grant or denial of a 1404(a) motion are entitled to guidance as to which route they should pursue, the more especially because of the frequent pronouncements that mandamus will not lie if review by appeal is available. E.g., Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947); Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943); 1 Moore, Federal Practice P0.147 at p. 1973 (2d ed. 1964).
 
 
 9
 It is important to note that Olinick here does not urge that the District Court considered an improper factor in deciding the motion to transfer, or that it ordered the case transferred to a district which was not one where the action 'might have been brought,' within the meaning of 28 U.S.C. 1404(a). In the latter case, there may well be 'a controlling question of law as to which there is substantial ground for difference of opinion,' and 'an immediate appeal from the order may materially advance the ultimate termination of the litigation,' 28 U.S.C. 1292(b), since the Court of Appeals for the circuit in which the transferee district is located might hold that the transfer was improper and that a retransfer and a new trial was necessary, even after trial. See Olberding v. Illinois Cent. R.R., 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39 (1953); cf. Continental Grain Co. v. The Barge FBL-585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); Foster-Milburn Co. v. Knight, 181 F.2d 949 (2d Cir. 1950).
 
 
 10
 Instead, Olinick contends that the District Court considered proper factors-- location of parties, witnesses, and documents; convenience to the parties; and docket conditions in the alternative districts, see Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); cf. Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 243-244, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964)-- but reached the wrong result.
 
 
 11
 The Courts of Appeals have been far from unanimous in deciding whether 1292(b) is available to one seeking to review the disposition of a 1404(a) transfer motion for erroneous evaluation of proper factors. The Fifth Circuit stoutly affirms that it is available, and that mandamus is accordingly inappropriate. Humble Oil & Ref. Co. v. Bell Marine Serv. Inc., 321 F.2d 53 (5th Cir.1963); In re Humble Oil & Ref. Co., 306 F.2d 567 (5th Cir.1962). The Third and Sixth Circuits just as stoutly hold that it is not available. Standard v. Stoll Packing Corp., 315 F.2d 626 (3d Cir.1963); Bufalino v. Kennedy, 273 F.2d 71 (6th Cir.1959). We have not addressed ourselves directly to the problem, although we have suggested that 'orders granting or denying motions for transfers pursuant to the provisions of 28 U.S.C. 1404(a) are * * * not appealable except by resort to mandamus'. Grossman v. Pearlman, 353 F.2d 284, 286 (2d Cir.1965); see Ackert v. Bryan, 299 F.2d 65, 67 (2d Cir.1962); see also Texas San Juan Oil Corp. v. An-Son Offshore Drilling Co., 198 F.Supp. 284, 286 (S.D.N.Y.1960).
 
 
 12
 We agree with the Third and the Sixth Circuits that 1292(b) is not available as a means to review the grant or denial of 1404(a) motions for incorrect evaluation of proper factors. The correctness of such an evaluation can only with difficulty be described as a 'controlling question of law'; and review of such an evaluation is not likely to advance the termination of the litigation since, even if the evaluation were incorrect, no reviewing court would be likely after a trial on the merits to order a transfer or retransfer for a new trial on the merits. See Note, Discretionary Appeals of District Court Interlocutory Orders: A Guided Tour Through Section 1292(b) of the Judicial Code, 69 Yale L.J. 333, 351 (1959). Indeed, review of the disposition of the transfer motion may delay a decision on the merits and so defeat the manifest statutory objective of making ligigation quicker and less expensive. Cf. All States Freight, Inc. v. Modarelli, 196 F.2d 1010, 1011-1012 (3d Cir.1952).
 
 
 13
 We are mindful of the statement of the House Judiciary Committee that 1292(b) would permit interlocutory appeals in 'causes relating to the transfer of the action where it is claimed that the transfer is not authorized by law.' H. R. Rep. No. 1667, 85th Cong., 2d Sess. 2 (1958). If anything, we read this statement as supporting our conclusion, since there is no question here but that the District Court had the power under 1404(a) to order the transfer; the only question is whether that power was properly exercised.[1]
 
 
 14
 2. The Trial Court's Exercise of Its Discretion
 
 
 15
 Once the inappropriateness of appeal under 1292(b) is established, the questions become whether we have the power to issue mandamus, and if so, whether we should exercise that power in this case.
 
 
 16
 Although it has been occasionally held that the Courts of Appeals should never review the disposition of a 1404(a) transfer motion 'where the judge in the district court has considered the interests stipulated in the statute and has decided thereon', All States Freight, Inc. v. Modarelli, 196 F.2d 1010, 1012 (3d Cir.1952); Great Northern R'y v. Hyde, 238 F.2d 852, 857 (8th Cir.1956), adhered to, 254 F.2d 537 (8th Cir.1957), cert. denied,355 U.S. 872, 78 S.Ct. 117, 2 L.Ed.2d 77 (1957); cf. Clayton v. Warlick,232 F.2d 699, 706 (4th Cir.1956); Loew's, Inc. v. McGuire, 92 U.S.App.D.C. 319, 205 F.2d 719 (1953), the great majority of recent appellate decisions, including those of our court, indicate that the Courts of Appeals consider themselves possessed of the power to issue mandamus in extraordinary circumstances to correct the disposition of a transfer motion by the District Court, even where the District Court has purported to consider proper factors. E.g., Ackert v. Bryan, 299 F.2d 65, 67 (2d Cir.1962); Ford Motor Co. v. Ryan, 182 F.2d 329 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950) (in which Judge Frank indicated that the test was 'abuse of discretion' and Judge Learned Hand indicated that it was whether the order was 'clearly erroneous'); In re Josephson, 218 F.2d 174 (1st Cir.1954) ('really extraordinary situations'); General Tire & Rubber Co. v. Watkins, 326 F.2d 926 (4th Cir.), cert. denied, 377 U.S. 909, 84 S.Ct. 1166, 12 L.Ed.2d 179 (1964) (reserving for decision when mandamus would issue to compel a transfer); Humble Oil & Ref. Co. v. Bell Marine Serv., Inc., 321 F.2d 53, 54-55 (5th Cir.1963) (review on appeal, as on mandamus, would be for abuse of discretion); Goranson v. Kloeb, 308 F.2d 655, 657 (6th Cir.1962) (only if 'clear abuse of discretion'); Butterick Co. v. Will, 316 F.2d 111 (7th Cir. 1963); McGraw-Edison Co. v. Van Pelt, 350 F.2d 361 (8th Cir.1965) (en bane decision overruling Great Northern R'y v. Hyde, supra, and holding that Court of Appeals could review on petition for mandamus whether the action of the District Court was arbitrary); Gulf Reserarch & Dev. Co. v. Harrison, 185 F.2d 457, 459 (9th Cir.1950), aff'd by a divided court, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668 (1952) (issuance only in 'extraordinary circumstances'); Houstion Fearless Corp. v. Teter, 318 F.2d 822, 828 (10th Cir.1963). See generally, 1 Moore, Federal Practice P0.147 (2d ed. 1964); Kitch, Section 1404(a) of the Judicial Code: In the Interest of Justice or Injustice?, 40 Ind.L.J. 99 (1965).
 
 
 17
 What emerges from a review of the cases is a strong sense of appellate reluctance to interfere with the District Court's exercise of its discretion under 28 U.S.C. 1404(a). The reasons for this reluctance are not hard to find. The Courts of Appeals understandably wish to reserve power to redress clearcut abuses of discretion in the handling of 1404(a) motions, since such abuses cause great inconvenience and expense to the litigants and are almost impossible to correct by review after trial. See Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir.), cert. denied, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624 (1950). At the same time, the Courts of Appeals are aware that the trial judge, with his superior opportunity to familiarize himself with the nature of the case and the probable testimony on trial, is better able to dispose of 1404(a) motions; that the statute by its terms vests broad discretion in the trial judge in considering the convenience of the parties and witnesses and the interest of justice; and that extended review by the appellate courts of the disposition of 1404(a) motions will prolong litigation and thwart the objectives of speedy and efficient trial which 1404(a) sought to further. For these reasons, dispositions of 1404(a) motions have almost never been overturned for abuse of discretion. Our court thus far has never done so; and other courts have done so only in the most clear-cut cases.[2]
 
 
 18
 We do not believe that the District Court so abused its discretion in ordering a transfer as to require the issuance of mandamus. To be sure, a number of factors pointed towards the retention of the case in New York. The plaintiff's choice of venue is still entitled to substantial consideration, although not so much upon a motion to transfer under 28 U.S.C. 1404(a) as upon a motion to dismiss for forum non conveniens, compare Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) with Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955). A number of witnesses reside in the New York area who might testify to the negotiations for the machine and for the agreement of February 25, 1964; to the nature of the defects in the machine; and to the damage to plaintiff's business caused by those defects. The machine itself can be viewed only in Brooklyn. Cf. Koehring Co. v. Hyde Constr. Co.,324 F.2d 295 (5th Cir.1964). On the other hand, many of the witnesses to both the purchase contract and the settlement negotiations, as well as employees of Dempster who designed, installed, and serviced the machine, reside in or near Knoxville. Their testimony may well be critical on whether Dempster carried out its obligations to repair under February 25, 1964, agreement; upon whether Dempster had notice of any serious defect not readily discoverable, so as to justify the recission of the February 25, 1964 agreement; and on the underlying claim that the machine was negligently designed, made, assembled and inspected. If it would be inconvenient for Olinick to try the case in Tennessee, it would also be inconvenient for Dempster to try the case in New York, where Dempster has no offices or employees. Finally, the trial court was entitled to attribute weight to the large difference in docket crowding between the Eastern District of New York, in which a case takes roughly two years to get to trial after the filing of a note of issue, and the Eastern District of Tennessee, Northern Division, in which a case can be reached for trial in approximately six to eight months. Cf. Fannin v. Jones, 229 F.2d 368 (6th Cir.), cert. denied, 351 U.S. 938, 76 S.Ct. 834, 100 L.Ed. 1465 (1956).
 
 
 19
 We do not need to decide whether we would have decided the motion for a transfer differently than did the trial court, had the motion been ours to decide.[3] Mandamus does not lie to review mere error in the disposition of 1404(a) motions, but only to redress a clearcut abuse of discretion. Butterick Co. v. Will, 316 F.2d 111 (7th Cir.1963); see Ackert v. Bryan, 299 F.2d 65 (2d Cir.1962); cf. Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 383, 74 S.Ct. 145, 98 L.Ed. 106 (1953). We cannot hold that the trial court's decision to transfer the present case, made only after oral argument and the submission of thorough affidavits and memoranda of law, contrast Swindell-Dressler Corp. v. Dumbauld, 308 F.2d 267 (3d Cir.1962), and on careful consideration of the convenience of parties and witnesses and the interest of justice, was a clear-cut abuse of discretion.
 
 
 20
 Application for leave to appeal denied; petition for writ of mandamus denied.
 
 FRIENDLY, Circuit Judge (concurring):
 
 21
 Appellate courts die hard in relinquishing powers stoutly asserted but never truly possessed; like generals, they prefer to fade away. Although the majority's retreat, restricting the use of mandamus in reviewing a district judge's exercise of discretion to transfer or not, to instances where abuse is 'clear-cut,' is a step in the right direction, we should go the whole way and end this sorry business of invoking a prerogative writ to permit appeals, which Congress withheld from us, from discretionary orders fixing the place of trial. Conceptual and practical considerations unit to demand recognition that when there is no question of transferability, our power to issue mandamus is limited to those cases, exceedingly hard to imagine in this circuit, where a district judge has denied a transfer motion without even considering the merits or has granted or denied one in such flagrant defiance of accepted principles as to evidence impermissible motivation. Cf. Wong Wing Hang v. I.N.S., 360 F.2d 715, 718-719 (2d Cir.1966). Such cases, and only such, come within 'the traditional use of the writ * * * to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.' Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). If perchance that is what my brothers mean, we ought to say so in language all will understand.
 
 
 22
 Again emphasizing the limited scope of the prerogative writs, the Court has stated that when, as here, Congress has withheld interlocutory review, the allwrits statute, 28 U.S.C. 1651(a), cannot 'be availed of to correct a mere error in the exercise of conceded judicial power', but can be used only 'when a court has no judicial power to do what it purports to do-- when its action is not mere error but usurpation of power * * *,' De Beers Consolidated Mines, Ltd. v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 1133, 89 L.Ed. 1566 (1945); see also United States Alkali Export Ass'n v. United States, 325 U.S. 196, 202-203, 65 S.Ct. 1120, 89 L.Ed. 1554 (1945). I do not read the decision in La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957), by a closely divided Court, as departing from these principles, although some language in the opinion might lend itself to that interpretation. The essential holding was that a court of appeals could and indeed should lay down a rule that a district judge may not delegate to a master the determination of liability in antitrust cases, 'an abdication of the judicial function depriving the parties of a trial before the court on the basic issues involved in the litigation', 352 U.S. at 256, 77 S.Ct. at 313; once that rule was established, requiring a judge to perform his judicial duty was a traditional use of mandamus.
 
 
 23
 When we turn from the conceptual to the practical, experience shows that entertaining applications for mandamus to review discretionary orders for transfer produces much harm and almost no good. In the fifteen years since this court first announced willingness to consider such applications, Ford Motor Co. v. Ryan, 182 F.2d 329 (2 Cir.1950),[1] we have never granted one. But even so dismal a record naturally does not prevent counsel from accepting our invitation, whether because in the heat of battle they have persuaded themselves of the merits of their cause or because, however slight their chance of success, they welcome the delay a mandamus petition will cause. Whatever the motivation, delay is the result; we have had this very petition under advisement almost as long as would have been needed to get to trial in the district of transfer, and the petitioner is thus having the worst of both worlds. The situation is no different elsewhere; the handful of cases where the writ has issued, see fn. 2 to my brother Moore's opinion, are a meagre harvest for the effort expended by lawyers and judges on the countless applications that failed and the delays in all-- even if we assume that in every case the trial court was wrong and the appellate court right.[2] I cannot think the restriction here imposed-- that we will issue the writ not for simple but only for 'clear-cut' abuse of discretion-- will help much. A lawyer who is ready to say that a district judge has abused his discretion will not boggle over the adjective, and application of the standards constantly being proliferated for review of orders of district judges-- error, clear error, abuse of discretion, now clear-cut abuse of discretion-- requires a mind more sensitive than mine. Indeed, if the criterion here applicable were error whether plain or fancy, I fail to see why the writ should not issue, since I find it hard to conceive a transfer less 'in the interest of justice' than directing this small Brooklyn concern, which is quite willing to await its turn for trial in the Eastern District of New York, to betake itself to the seat of defendant's considerable activity in Tennessee. On the other hand, on the test I think proper, we could have dismissed the petition on a mere reading of the judge's memorandum, which made clear that he acted judicially although, in my view, in this instance injudiciously.
 
 
 24
 If we possessed no other guides to decision, I would therefore urge that the court in banc disapprove Ford Motor Co. v. Ryan, supra, and align itself with the views forcibly expressed by Judge Goodrich for the Third Circuit in All States Freight, Inc. v. Modarelli, 196 F.2d 1010, 1012 (1952),[3] by Judge Magruder for the First in In re Josephson, 218 F.2d 174, 183 (1 Cir.1954), by Judge Parker for the Fourth in Clayton v. Warlick, 232 F.2d 699, 702-706 (1956), but see Morehead v. Barksdale, 263 F.2d 117, 118-119 (4 Cir.1959), and General Tire and Rubber Co. v. Watkins, 326 F.2d 926, 929 (4 Cir.), cert. denied, 377 U.S. 909, 84 S.Ct. 1166, 12 L.Ed.2d 179 (1964), and by Judge Sanborn for the Eighth in Great Northern Ry. Co. v. Hyde, 238 F.2d 852, 857 (1956), adhered to, 245 F.2d 537, cert. denied, 355 U.S. 872, 78 S.Ct. 117, 2 L.Ed.2d 77 (1957), overruled, McGraw-Edison Co. v. Van Pelt, 350 F.2d 361 (1965); we should make clear, in accord with these decisions of leading judges, that we will not listen to discussions whether a district judge made an error, clear-cut or otherwise, in deciding whether or not to transfer, but will entertain applications for mandamus as to transfer orders only when there is an issue of transferability or a substantial claim that the judge has refused to exercise or has usurped judicial power. As I see it, however, the Supreme Court's decision in Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964), is sufficiently dispositive to eliminate any need for an in banc hearing.
 
 
 25
 In that case the district judge had denied a defendant's motion to transfer a criminal antitrust action under F.R.Cr.P. 21(b), in part on the basis of a finding that the Government would have difficulty in getting an impartial jury in defendant's home district. The court of appeals considered this an impermissible ground and the Supreme Court agreed. The court of appeals also ruled that, absent this ground for retention, the factors dictated transfer and so ordered, Chief Judge Hastings dissenting; the Supreme Court reversed, holding that 'the function of the Court of Appeals * * * was to determine the appropriate criteria and then leave their application to the trial judge on remand.' 376 U.S. at 245, 84 S.Ct. at 772. Although the exact point decided was that the district judge should have an opportunity to reconsider the transfer with the impermissible factor excluded, the Court would hardly have directed a remand if refusal by him to comply with the limitations of the court of appeals would have warranted renewed issuance of the writ; the Court was concerned with the distribution of power, not with judicial etiquette.[4] When Platt is read in the light of the Court's earlier holdings on the limited scope of mandamus, see also Bankers Life & Casualty Co. v. Holland, 346 U.S. 379, 383-385, 74 S.Ct. 145, 98 L.Ed. 106 (1953),[5] neither the position stated by Judge Frank in Ford Motor Co. v. Ryan nor the slightly modified one here announced can stand.
 
 
 26
 I therefore concur in denying the writ, but on the basis that the petition seeks relief beyond our power to grant.
 
 
 
 [1]
 It is significant that Judge John J. Parker, Chairman of the Judicial Conference's Committee on Appeals from Interlocutory Orders of the District Courts, in explaining to a subcommittee of the House Judiciary Committee that interlocutory appeals would be useful in cases of transfers 'not authorized by law,' referred only to cases in which litigants claimed that the transferee court lacked jurisdiction. Hearings Before Subcommittee No. 3 of the House Committee on the Judiciary, 85th Cong., 2d Sess., Ser. 11 at 9 (1958)
 
 
 [2]
 Chicago, R.I. & P.R.R. v. Igoe, 220 F.2d 299 (7th Cir.), cert. denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955) (personal injury case; district court had denied motion for transfer, even though accident took place, and plaintiff and all witnesses resided, in proposed transferee district, the docket of which was far less crowded than the docket of the district in which plaintiff brought suit); Atlantic Coast Line R.R. v. Davis, 185 F.2d 766 (5th Cir. 1960) (district court ordered transfer from Florida to New York even though accident took place in Florida, and plaintiff and all witnesses resided there); Koehring Co. v. Hyde Constr. Co., 324 F.2d 295 (5th Cir. 1965) (district court had retained suit over construction of plant in Oklahoma, even though view was possible only in Oklahoma, almost all witnesses resided there, and docket was less congested there). Occasionally Courts of Appeals, reversing decisions for other reasons, have indicated that a transfer would be appropriate on remand. Chicago, R.I. & P.R.R. v. Hugh Breeding Inc., 247 F.2d 217, 226 (10th Cir.), petition for cert. dismissed, 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107 (1957); Southern R'y v. Madden, 235 F.2d 198 (4th Cir.), cert. denied, 352 U.S. 953, 77 S.Ct. 328, 1 L.Ed.2d 244 (1956)
 
 
 [3]
 The Supreme Court had suggested in an analogous case involving transfer under F.R.Crim.P. 21(b) that 'the function of the Court of Appeals * * * was to determine the appropriate criteria and then leave their application to the trial judge on remand,' and that the Court of Appeals should not review the record de novo and itself exercise the discretionary function committed to the trial court. Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 245, 84 S.Ct. 769, 772, 11 L.Ed.2d 674 (1964). However, the Court has shown itself willing to spell out in considerable detail the importance of the relevant factors, see Van Dusen v. Barrack, 376 U.S. 612, 643-646, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); and in Koehring Co. v. Hyde Constr. Co., 383 U.S. 939, 86 S.Ct. 1062, 15 L.Ed.2d 857 (1966), the Court held that under extraordinary circumstances an appellate court, convinced that the trial court erred in failing to transfer a case, could transfer the case itself
 
 
 [1]
 Although the panel in that case was unanimous in refusing to compel the judge to order a transfer, three separate opinions were written. Judge Swan thought we had no power to issue the writ; Judge Frank, writing for Judge L. Hand and himself on the question of power, thought we could issue mandamus if the district judge had abused his discretion but, speaking for himself, that 'we should accept his guess unless it is too wild'-- not a very meaningful standard; Judge L. Hand adopted a 'clearly erroneous' test. Torres v. Walsh, 221 F.2d 319 (2 Cir.), cert. denied, 350 U.S. 836, 76 S.Ct. 72, 100 L.Ed. 746 (1955), refusing to compel two judges to rescind transfer orders, added the qualification that mandamus can issue only in 'really extraordinary causes,' cf. Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947), and not in 'ordinary, run-fo-the-mill type litigation which goes through the District Courts from day to day.' Although Lykes Bros. SS. Co., Inc. v. Sugarman, 272 F.2d 679 (2 Cir. 1959), refusing to compel a transfer, is equivocal, it seems to have returned to the concept that the 'extraordinary' test related to the ruling rather than the case-- or perhaps demanded both. See 272 F.2d at 680 and 683
 
 
 [2]
 In the fiscal year ending June 30, 1955, the average time for disposition of mandamus petitions in cases under 28 U.S.C. 1404(a) ranged from less than a month in the 5th and 6th Circuits to about six months in the 1st, 3d, 4th and 7th. See Note, Appealability of 1404(a) Orders: Mandamus Misapplied, 67 Yale L.J. 122, 129, n. 27 (1957). In Chicago, R.I. & P.R.R. v. Igoe, 220 F.2d 299 (7 Cir.), cert. denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955), the writ issued two and a half years after the question was first raised in the district court-- with two trips to the Court of Appeals, see 212 F.2d 378 (1954) and a subsequent petition for certiorari. See generally Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn.L.Rev. 751, 776-777 (1957)
 
 
 [3]
 '* * * the risk of a party being injured by the granting or refusal of a transfer order is, we think, much less than the certainty of harm through delay and additional expense if these orders are to be subjected to interlocutory review by mandamus
 'We do not propose to grant such review where the judge in the district court has considered the interests stipulated in the statute and decided thereon.'
 
 
 [4]
 On remand Judge Platt refused to transfer, and the court of appeals issued the writ, Chief Judge Hastings again dissenting, 345 F.2d 681 (7 Cir. 1965). Finally, upon the Solicitor General's suggestion of mootness, the Supreme Court granted certiorari, vacated the judgment and remanded the case with instruction to dismiss the mandamus proceeding as moot. 382 U.S. 456, 86 S.Ct. 643, 15 L.Ed.2d 522 (1966). The bickering over the place of trial of this government antitrust suit consumed more than three years
 
 
 [5]
 No broader view of the power of a court of appeals to issue mandamus was indicated by Koehring Co. v. Hyde Construction Co., 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416 (1966), sustaining the right of the court of appeals itself to order a transfer under extraordinary circumstances where a district judge refused to comply with its manndate