408 F.2d 662
 George E. FARRELL, as Administrator de bonis non of the Estate of Wyand F. Doerner, Jr., deceased, et al., Plaintiffs-Petitioners,
v.
The Honorable Inzer B. WYATT, United States District Judge for the Southern District of New York, Respondent.
 No. 495.
 Docket 33246.
 United States Court of Appeals Second Circuit.
 Submitted February 10, 1969.
 Decided March 18, 1969.
 
 Kreindler & Kreindler, New York City, Gerald A. Robbie, New York City, on the brief, for plaintiffs-petitioners.
 Robert M. Morgenthau, U. S. Atty., for Southern District of New York, Patricia M. Hynes, Asst. U. S. Atty., on the brief, for the United States.
 Before ANDERSON and FEINBERG, Circuit Judges, and MANSFIELD, District Judge.*
 FEINBERG, Circuit Judge:
 In July 1967, a Boeing 727 jet airplane collided with a smaller Cessna 310 aircraft over Hendersonville, North Carolina. There were 74 passengers and five crew members in the larger plane and two passengers and the pilot in the smaller. All were killed. That tragedy led to various lawsuits, one of which is the subject of this petition for a writ of mandamus or prohibition by plaintiffs-administrators. The petition seeks to vacate two orders of the United States District Court for the Southern District of New York, Inzer B. Wyatt, J., which transferred an action to the United States District Court for the Western District of North Carolina. For reasons given below, we deny the petition.
 
 
 1
 The action in question was brought in the Southern District on behalf of the estates of thirteen decedents; none of them or their beneficiaries is, or was, a citizen of New York, although the plaintiffs-administrators are New York residents. Defendants named in the complaint are The Boeing Company, owner, designer and manufacturer of the 727 jet; Piedmont Aviation, Inc., operator of that plane; Lanseair, Inc., owner of the Cessna; Rapidair, Inc., employer of its pilot; and the United States, employer of air traffic controllers in the vicinity of the crash. Complete diversity existed between the four corporate defendants and plaintiffs' decedents and their beneficiaries.[1] The action in New York was but one of many, the great bulk of which are pending in the above mentioned federal court in North Carolina, the state in which the crash occurred.
 
 
 2
 Pursuant to 28 U.S.C. § 1404(a), defendants the United States and Piedmont moved to transfer the action to that court. Judge Wyatt granted the motions on November 27, 1968, holding that:
 
 
 3
 Every consideration of convenience and efficiency suggests that all litigation arising from this tragic disaster should be concentrated in one district. Logically, the Western District of North Carolina is that one district. It would be wasteful judicial administration for judges in two or more districts to be occupied at the same time by the same problems of fact and law.
 
 
 4
 Plaintiffs-petitioners do not quarrel with this finding and do not claim that the judge abused his discretion in deciding that transfer served "the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).[2] They argue instead that the judge lacked power to transfer. Before addressing ourselves to this claim on the merits, however, there are procedural issues to be considered.
 
 
 5
 * On December 5, 1968, well before any application to us, the clerk of the Southern District mailed the file in plaintiffs' action to the federal district court in Asheville, North Carolina, in accordance with Judge Wyatt's orders. The United States moves to dismiss the petition for a writ of mandamus on the ground that this court does not have "jurisdiction" to hear it because the action is no longer pending in the Southern District. The question thus posed is not an easy one, for we have indicated that if a case has actually been physically transferred before application for a stay or a writ is made, petitioner is too late and the application will be denied. See Drabik v. Murphy, 246 F.2d 408 (2d Cir. 1957). But cf. A. C. Nielsen Co. v. Hoffman, 270 F.2d 693, 695 (7th Cir. 1959). The stated reason given in Drabik was that, after physical transfer, there is nothing left for the district court to act upon. Obviously, there is a practical justification for requiring immediate application for interim relief, such as a stay; doing so prevents unnecessary delay in resolving the confusion that a mandamus proceeding inevitably entails, particularly when it involves a transfer of a case to another district. Cf. In re Southwestern Mobile Homes, Inc., 317 F.2d 65 (5th Cir. 1963) (per curiam). Since General Rule 7 of the Southern District,[3] upon which the United States relies, contemplates a period of five days between an order of transfer and the physical execution thereof, it is unfortunate that plaintiffs sought no stay. Certainly, were the issue before us abuse of discretion, plaintiffs' inaction would at the very least weigh most heavily with us in deciding whether to consider the application for relief. But we do not see how the district court rule can affect our jurisdiction.
 
 
 6
 In any event, the question here is whether the district court had power to order the transfer; when that is the issue, we reject the argument of the United States that the clerk's physical transfer of the file destroyed our jurisdiction. As we said in Foster-Milburn Co. v. Knight, 181 F.2d 949, 951 (2d Cir. 1950), if the district court had no power to transfer, "the transfer will be a nullity," the transferee court "will have no jurisdiction * * *, and any judgment it may enter will be void." The contrary intimations of lack of jurisdiction in Drabik and Magnetic Engineering & Manufacturing Co. v. Dings Manufacturing Co., 178 F.2d 866 (2d Cir. 1950), were expressed in the context of a claimed abuse of discretion. Of course, we do not mean to condone delay or to encourage efforts to overturn orders of district courts granting or denying transfer under section 1404(a); we have apparently never reversed such an order for abuse of discretion. See American Flyers Airline Corp. v. Farrell, 385 F.2d 936, 938 (2d Cir. 1967), cert. denied, 390 U.S. 1012, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968); A. Olinick & Sons v. Dempster Bros., 365 F.2d 439, 444 (2d Cir. 1966). Even where the issue is lack of power, those attacking a transfer order should move swiftly for interim relief rather than allow two months to go by, as here, before seeking to set it aside.[4] Moreover, when the question is the district court's power, a proper — although not exclusive — procedural approach is to seek an interlocutory appeal under 28 U.S.C. § 1292(b), see A. Olinick & Sons v. Dempster Bros., supra, 365 F.2d at 442-443, as was done in Wyndham Associates v. Bintliff, 398 F.2d 614 (2d Cir.), cert. denied, 393 U.S. 977, 89 S.Ct. 444, 21 L.Ed.2d 438 (1968). However, because of the fundamental nature of the objections raised to Judge Wyatt's transfer orders, we have decided to deal with the substance of the application.
 
 II
 
 7
 Petitioners' arguments on the merits stem from the interaction of North Carolina state law and the fact that six of the plaintiffs' decedents died intestate. North Carolina law requires any action for the wrongful death of an intestate decedent to be brought by a resident of North Carolina appointed as administrator by a North Carolina court.[5] Plaintiffs-petitioners, all New York residents, argue that at least some of them could not have filed suit in North Carolina because of that local law and, since defendant Piedmont is a North Carolina corporation, diversity jurisdiction would have been lacking had North Carolina residents been appointed administrators. Petitioners' claim that Judge Wyatt exceeded his powers runs as follows: (1) Section 1404(a) allows transfer of an action only to a district "where it might have been brought"; (2) for the reasons stated above, some plaintiffs could not have sued in the first instance in the district court in North Carolina; (3) therefore, the judge had no power to transfer the action to that court.
 
 
 8
 Judge Wyatt held that the issue is governed by Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). In that case, 40 wrongful death actions arising out of an airplane disaster in Massachusetts had been instituted in the Eastern District of Pennsylvania by the personal representatives of the crash victims. Defendants moved to transfer the actions to the District of Massachusetts; plaintiffs resisted on the ground that Massachusetts was not a district in which the actions "might have been brought" because the plaintiffs had not qualified — although they could have — to bring such a suit under the laws of Massachusetts. Upon petition for a writ of mandamus, the court of appeals sustained this objection and vacated the district court's order of transfer. The Supreme Court reversed, holding, 376 U.S. at 624, 84 S.Ct. at 813, that
 
 
 9
 the words "where it might have been brought" must be construed with reference to the federal laws delimiting the districts in which such an action "may be brought" and not with reference to laws of the transferee State concerning the capacity of fiduciaries to bring suit.
 
 
 10
 Accordingly, the transferee district was a place where suit "might have been brought" because there was no question of the propriety of venue, service of process, or jurisdiction of the parties.
 
 
 11
 We agree with Judge Wyatt that Van Dusen controls and permits the transfer ordered here. As the quoted language makes clear, the Court was there engaged in statutory construction, concluding that the phrase "where it might have been brought" simply does not refer to such state law rules as those concerning capacity to sue. The Court gave a compelling reason for this construction, id. at 622, 84 S.Ct. at 812:
 
 
 12
 "The idea behind § 1404(a) is that where a `civil action' to vindicate a wrong — however brought in a court — presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." This remedial purpose — the individualized, case-by-case consideration of convenience and fairness — militates against restricting the number of permissible forums within the federal system.
 
 
 13
 Accordingly, here, as in Van Dusen, the inability of plaintiffs under local state law to institute suit in the transferee forum is not controlling. Petitioners attempt to distinguish Van Dusen because plainiffs there could have qualified but had not done so, while here some cannot. However, the basis of the Court's decision in Van Dusen makes clear that this is irrelevant. Simply stated, "There is no valid reason * * * to narrow the range of permissible federal forums beyond those permitted by federal venue statutes * * *." Id. at 623, 84 S.Ct. at 812.
 
 
 14
 Petitioners claim, however, that even if Van Dusen does govern this case, the district court misconstrued its import. They argue that the Court held that the law of the transferor forum (here, New York) must apply in deciding whether the action "might have been brought" in the transferee forum and that New York would supply a negative answer. However, petitioners' reading of Van Dusen is fundamentally wrong. As indicated above, where a case "might have been brought" refers to federal laws of venue, service and jurisdiction — not to the local law of capacity of the state where the transferee court sits, and a fortiori not to the local law of capacity in the transferee court as interpreted by the state courts in the state where the transferor court sits. It is true that the Court in Van Dusen made clear that section 1404(a) is merely a "judicial housekeeping measure" that simply authorizes "a change of courtrooms" but not of law, if the latter "would significantly affect the outcome of the case," id. at 636-637, 639 n. 40, 84 S.Ct. at 821 and that, therefore, the North Carolina district court must apply the state law that would have been applied in the Southern District. Here, however, the Court was referring not to the "might have been brought" phrase but to the "in the interest of justice" language of section 1404(a) and to Fed.R. Civ.P. 17(b).[6] As to the latter, the Court specifically said that capacity to sue under that rule "will also be governed by the laws of the transferor State." Id. at 642, 84 S.Ct. at 822. We do not believe that a New York court — state or federal — would dismiss any of the claims by these plaintiffs-administrators on the ground that the administrator is not a resident of North Carolina. Petitioners, of course, admit this, recognizing that "the North Carolina `door-closing' statute applies only to suits commenced within that state." Therefore, under Van Dusen, even though the case is now in the district court in North Carolina, substitution of North Carolina residents as administrators in the six actions for decedents who died intestate cannot properly be required, regardless of local law. Accordingly, loss of diversity jurisdiction in those actions will not be a proper consequence of the transfer.
 
 
 15
 In sum, we conclude that petitioners' arguments addressed to Judge Wyatt's power are not well taken and deny the petition.
 
 
 
 Notes:
 
 
 *
 Of the Southern District of New York, sitting by designation
 
 
 [1]
 We therefore have no problem of "manufactured" diversity jurisdiction. Cf. McSparran v. Weist, 402 F.2d 867 (3d Cir. 1968), petition for cert. filed, 37 U.S. L.W. 3201 (U.S. Nov. 25, 1968) (No. 772); Lang v. Elm City Constr. Co., 324 F.2d 235 (2d Cir. 1963) (per curiam).
 
 
 [2]
 Section 1404(a) provides:
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 
 
 [3]
 That rule states:
 In a case ordered transferred from this district, the clerk, unless otherwise ordered, shall upon the expiration of five days mail to the court to which the case is transferred (1) certified copies of the court's opinion ordering the transfer, of its order thereon, and of the docket entries in the case, and (2) the originals of all other papers on file in the case.
 
 
 [4]
 On December 27, 1968, plaintiffs-petitioners did file a notice of appeal from final orders of Judge Wyatt vacating attachments and dismissing the complaint against defendants Lanseair, Inc. and Rapidair, Inc. Like the transfer orders involved in this proceeding, those orders were entered on November 27, 1968. Petitioners explain that their reason for not bringing the present petition until February 6, 1969, the same date they filed their brief on appeal from the other orders, was "to avoid multiplicity of appellate review," a laudable though unachieved purpose
 
 
 [5]
 N.C.Gen.Stat. §§ 28-8(2), 28-173
 
 
 [6]
 That rule, with exceptions not here relevant, provides as follows:
 Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held * * *. [Emphasis added.]