William Rodger STARNES, Appellant,

v.

Honorable Matthew F. McGUIRE

Arthur Everett SMALL, Jr., Appellant,

v.

Honorable George L. HART, Jr.

Nos. 73–1034, 73–1827.

United States Court of Appeals, District of Columbia Circuit.

Argued En Banc Nov. 8, 1973.

Decided Nov. 8, 1974.

---

Alvin J. Bronstein, Washington, D. C. with whom Philip J. Hirschkop, Alexandria, Va., was on the brief for appellant in No. 73–1034.

Gladys Kessler, Washington, D. C. (appointed by this court), for appellant in No. 73–1827.

Nathan Dodell, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty. at the time the brief was filed, John A. Terry, Arnold T. Rikens, and Eric B. Marcy, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges, sitting en banc.

McGOWAN, Circuit Judge:

These cases, heard together *en banc,* involve in each instance a petition by a federal prisoner for a writ of mandamus compelling vacation of a District Court order transferring the underlying case to the district of the prisoner's place of confinement. At issue is the propriety of the exercise of authority granted in 28 U.S.C. § 1404(a):

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought.

Our *en banc* consideration was prompted by a seeming need to define with greater precision, if possible, the scope of our decision in Young v. United States Bureau of Prisons, et al., 125 U.S. App.D.C. 105, 367 F.2d 331 (1966). The District Court frequently has occasion to apply *Young,* and it is a matter of obvious importance, Rule 35(a), FRAP, that both we and the District Court be correct—and, as nearly as possible, at one—in our interpretations of the purposes and reach of Section 1404(a), and in our concepts of the procedures appropriate for its implementation.

For the reasons stated hereinafter, we find that we are without jurisdiction to consider the petition in No. 73–1034; and we deny the petition on its merits in No. 73–1827.

I

*Young* was one of two cases before the court on motions for leave to prosecute appeals without prepayment of costs filed by two inmates of the Federal Penitentiary in Lewisburg, Pennsylvania, who had brought separate declaratory judgment actions against federal officials in the District Court. One of the inmates, Young, had sued the Director of the Bureau of Prisons and the Chairman of the Board of Parole, asking that the time he spent on parole before being recommitted as a parole violator be credited against his sentence. The other inmate, Rossello, had sued the Board of Parole, complaining of delay in the issuance and execution of a parole violator warrant. In the case of Young, the District Court granted a motion to dismiss the complaint on its merits.[1] In the case of Rossello, the District Court granted a motion under Section 1404(a) to transfer the case to the Middle District of Pennsylvania.

On appeal we said that *Rossello* squarely posed the issue whether the District Court was obligated "to entertain declaratory judgment actions brought by inmates not confined in the District of Columbia, not sentenced in the District of Columbia, and seeking resolution of issues in no way related to this jurisdiction . . . " We held

---

1. Young's case involved a challenge to the constitutionality of 18 U.S.C. § 4205, a statute which has been sustained against such attack in a number of federal courts of appeals. *See, e. g.,* Cooks v. U. S. Board of Parole, 447 F.2d 63 (5th Cir. 1971); Moore v. Smith, 412 F.2d 720 (7th Cir. 1969); Weathers v. Willingham, 356 F.2d 421 (10th Cir. 1966). This circuit has upheld its analogue in the D.C. Code. Bates v. Rivers, 116 U.S.App.D.C. 306, 323 F.2d 311 (1963), Wright, J., dissenting.

that, in light of the 1962 amendment to the venue statute, 28 U.S.C. § 1391(e), our decisions prior to that amendment did not preclude transfer to the district of confinement under Section 1404(a) and that, "absent extraordinary circumstances which we need not today delineate, such actions should ordinarily be transferred as a matter of course."

We noted several reasons why we thought this course to be "in the interest of justice." The first was that the transfer is responsive to the Congressional purpose underlying the 1962 amendment.[2] Second, we considered such transfer to be desirable as a practical matter "since, if an evidentiary hearing is necessary to resolve disputed issues of material fact, the inmate will be readily available." Our third stated reason was that transfer will discourage duplicative litigation and will relieve the D. C. courts of the unnecessarily onerous task of deciding cases brought "by a prisoner incarcerated far away from Washington, D. C., and based on events alleged to have taken place in distant parts of the country" (citing and quoting from Phillips v. United States, 122 U.S.App.D.C. 235, 352 F.2d 711, 716 (1965)). We concluded by saying (at p. 333 of 367 F.2d):

> "Hereafter, if such cases are instituted in this jurisdiction, the pleadings are to be preliminarily examined to determine whether any compelling reason requires the matter to be litigated here. If no such reason appears, transfer of the case to the district of confinement would be in order. [Note 7, quoted above]. While there may be

exceptional circumstances which would warrant retention of jurisdiction, it seems to us that such cases would be rare."

We disposed of Rossello's motion to proceed *in forma pauperis* on the ground that his claim that the District Court abused its discretion in transferring the case to Pennsylvania was frivolous. As for Young, we said only that "we discover no extraordinary circumstances that would require his action to be litigated here," and we therefore granted his appeal *in forma pauperis,* vacated the District Court's judgment on the merits, and remanded with instructions that the case be transferred to Pennsylvania.

## II

Our disposition of one of the two petitions for mandamus presently pending before us *en banc* does not involve consideration of the merits of the transfer under Section 1404(a). On September 2, 1972, Starnes, a federal prisoner at Leavenworth, filed a *pro se* complaint against the Board of Parole in the District Court for the District of Columbia challenging the constitutionality of 18 U.S.C. § 4205,[3] and moved to convene a three-judge court. On October 16, the Board filed (and mailed to the plaintiff) a motion to transfer the action to the District Court for Kansas—the court in the place of the plaintiff's confinement. Plaintiff filed his *pro se* opposition to the motion to transfer on October 27, and three days later Judge McGuire entered an order directing transfer. On November 15, the Clerk of the District Court transferred

---

**2.** The 1962 amendment to the general venue statute was accompanied by the enactment of 28 U.S.C. § 1361. The latter provides that the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. Note 7 of our opinion in *Young* characterized this 1962 legislation in these terms:

> Congress found that no sound reason required all actions against federal officials to be litigated exclusively in the District of Columbia (S. Rep. No. 1992, 87th Cong., 2d Sess. 3 (1962) U.S. Code Congressional and

Administrative News, p. 2784) and expressed the view that the more liberal venue provisions would materially reduce congestion in the District Court for the District of Columbia which is "already heavily burdened" and where "substantial delays are incurred." H. R. Rep. No. 536, 87th Cong., 1st Sess. 3 (1961).

**3.** Starnes was thus seeking to make the same claim as had been raised by Young, note 1 *supra.* Like Young, Starnes was not confined in the District of Columbia, and neither had he originally been sentenced here.

the original papers to the District Court for Kansas.[4] The District Court in Kansas dismissed the case, on motion of the Board, on January 4, 1973. Five days later a motions division of this court ordered filed plaintiff's petition for a writ of mandamus compelling vacation of the transfer order.[5]

A panel of this court, although characterizing the transfer as error, subsequently concluded that this court could provide no relief to Starnes for the reason that his case had been decided on the merits by the District Court in Kansas, and that the proper forum for review of that action was by appeal to the Tenth Circuit. Examining this state of affairs *en banc* and with the panel opinion vacated, we find that we are without jurisdiction to consider the subject matter of the petition for mandamus.

Although it is well established that a transferee court cannot directly review the transfer order itself, Illinois Tool Works v. Sweetheart Plastics, 436 F.2d 1180 (7th Cir.), cert. dismissed, 403 U.S. 942, 91 S.Ct. 2270, 29 L.Ed.2d 722 (1971); Purex Corp. v. St. Louis Nat'l Stockyards, 374 F.2d 999 (7th Cir.), cert. denied, 389 U.S. 824, 88 S.Ct. 59, 19 L.Ed.2d 77 (1967); Preston Corp. v. Raese, 335 F.2d 827 (4th Cir. 1964); In re Southwestern Mobile Homes, Inc., 317 F.2d 65 (5th Cir. 1963), it is equally clear that physical transfer of the original papers in a case to a permissible transferee forum deprives the transferor circuit of jurisdiction to review the transfer.[6] Farrell v. Wyatt, 408 F.2d 662, 664 (2d Cir.), motion for leave to file petition for writ of mandamus denied, 396 U.S. 810, 90 S.Ct. 145, 24 L.Ed.2d 122 (1969); In re Southwestern Mobile Homes, *supra*; Drabik v. Murphy, 246 F.2d 408 (2d Cir. 1957); *cf.* A. C. Nielsen Co. v. Hoffman, 270 F.2d 693 (7th Cir. 1959).

Occasionally informal procedures may be employed to return a case to the transferor circuit for review of the order, *see* Fine v. McGuire, 139 U.S.App. D.C. 341, 433 F.2d 499, 500 n. 1 (1970); Preston Corp. v. Raese, 335 F.2d 827, 828 (4th Cir. 1964). Nevertheless, the appropriate course of action when physical transfer has already taken place at the time the petition for mandamus is filed is a new proceeding seeking retransfer in the transferee court, which may be reviewed by the transferee circuit. *See* Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254; D'Ippolito v. American Oil Co., 401 F.2d 764 (2d Cir. 1968).

This state of the law makes it essential that procedures be adopted and observed that will provide plaintiffs a fair opportunity to seek review in the transferor circuit prior to the physical transfer of the record. It is also true, however, that this court has lost jurisdiction of Starnes' case by its physical transfer to a forum to which transfer

4. We are advised that the Clerk, as a matter of practice rather than local court rule, delays physical transfer of the record for a period of at least ten days following the entry of a Section 1404(a) transfer order.

5. The procedural history of that order is as follows: On November 10, 1972, plaintiff had mailed to this court a *pro se* pleading styled a "Motion for Stay of Transfer" and including a request for leave to proceed *in forma pauperis.* That was received on November 14, and filed on December 4. Leave to file a petition for writ of mandamus *in forma pauperis* was granted on January 9, 1973, at which time an order staying transfer would normally have been entered. By that time, however, physical transfer had already taken place. We recognize that procedures must be adopted that will allow physical transfer to be delayed beginning with the receipt of a motion for leave to file a petition for mandamus *in forma pauperis.*

6. Where the transfer is to a forum that is not permitted under Section 1404(a) (*i. e.*; a forum where the action could not have been brought) it is possible to argue that the transferor court was without power to order the transfer and that therefore the transferor court never lost jurisdiction over the action. *See* Farrell v. Wyatt, 408 F.2d 622 (2d Cir. 1969). Similarly, when the appeal has been filed and docketed at the time the physical transfer takes place, the district court is without power to complete a valid physical transfer. *See* Magnetic Engineering & Mfg. Co. v. Dings Mfg. Co., 178 F.2d 866, 869 (2d Cir. 1950).

was possible under 28 U.S.C. §§ 1404(a) and 1391(e).[7]

## III

On May 24, 1973, petitioner Small, an inmate at Leavenworth under a sentence imposed by the District Court in Colorado, filed in the District Court here a petition *pro se* for mandamus against the United States Board of Parole. The petition alleged that the reasons given for the Board's revocation of Small's parole and refusal to reparole him were constitutionally inadequate and arbitrary, and that the Board had failed to consider relevant evidence. The primary relief sought by the petition was an order directing that Small be reparoled.

On May 29, 1973, Judge Hart *sua sponte* ordered the case transferred to the District Court for the District of Kansas—the place of petitioner's confinement. On June 11, plaintiff filed a motion for stay of the order (mailed June 3), which motion was denied July 13. It appears that sometime between July 13 and July 24, Judge Hart ordered that physical transfer of the case be stayed. On July 24, plaintiff moved for reconsideration of the July 13 order; this motion was denied on July 25.[8]

Meanwhile, this court had received, on June 19, a motion to file *in forma pauperis* a petition for writ of mandamus compelling vacation of the transfer order. This motion was filed on June 26.

On July 27, with the physical transfer still delayed pursuant to the direction of Judge Hart, this court granted leave to file a petition for writ of mandamus *in forma pauperis,* ordered the petition docketed, and entered an order staying the District Court's transfer order. The petition alleges that there is no reason for transfer, that there are affirmative reasons not to transfer, and that the transfer order was an abuse of discretion.

Petitioner correctly notes that our decision in *Young* does not eliminate the need for an examination of the facts of each case prior to any decision on whether transfer should be ordered under 28 U.S.C. § 1404(a). *See* Van Dusen v. Barrack, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960); Fine v. McGuire, 139 U.S.App.D.C. 341, 433 F.2d 499 (1970); Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504 (1969). When the federal officers named as defendants are to be found within the District of Columbia for purposes of personal jurisdiction, venue is properly laid here under Section 1391(e). Transfer elsewhere under Section 1404(a) must, therefore, be justified by particular circumstances that render the transferor forum inappropriate by reference to the considerations specified in that statute.

Absent such circumstances, transfer in derogation of properly laid venue is un-

---

**7.** Not only do we believe that for the purposes of Sections 1391(e) and 1404(a) a prisoner has his "residence" at his place of confinement, *see* Young v. Board of Parole, *supra*; Phillips v. United States Board of Parole, *supra; but see* Ellingburg v. Connett, 457 F.2d 240 (5th Cir. 1972); Ott v. United States Board of Parole, 324 F.Supp. 1034 (W.D.Mo.1971), but we also note that Judge Templar of the District Court in Kansas characterized the complaint as sounding in habeas, in which case the appropriate forum clearly was the place of confinement. Further, this case does not present any type of special circumstance that might impel us to suggest to our brother courts that they vacate the judgment and return the case to us. *Cf.* Swindell-Dressler Corp. v. Dumbauld, 308 F.2d 267 (3d Cir. 1962). Starnes was provid-

ed a chance to litigate the scope and constitutionality of 18 U.S.C. § 4205 in Kansas, in the same way that our disposition of *Young* provided that same opportunity in Pennsylvania. There is certainly no reason why all cases involving the construction or constitutionality of a federal statute should be litigated in the District of Columbia.

**8.** Small thus was given two opportunities to present his arguments to the district judge on why his case should not be transferred. We note, however, that notice of an order and an opportunity to file a motion for stay should not in the future be deemed adequate to meet the requirements of preorder notice and opportunity to respond which we outline in Part V *infra.*

warranted. Our statement in *Young* that "absent extraordinary circumstances . . . such actions should ordinarily be transferred as a matter of course," was merely a recognition of the fact that many, if indeed not most, petitions filed by prisoners not confined in the District of Columbia and not sentenced here originally, will tend to involve factors that make transfer to the place of incarceration appropriate. One of these factors, specifically mentioned in *Young,* is the availability of witnesses, including the availability of the prisoner himself when his testimony, as is often the case, is essential.

Small now characterizes on appeal his original petition in the District Court for a writ of mandamus against the Board of Parole as challenging only an alleged national policy of not providing any reasons whatsoever for revocation of parole: "Thus, he is attacking a general policy made and implemented by the Parole Board which is located here in Washington. Litigation of his case will involve no evidentiary issues concerning his own incarceration, release to the Colorado authorities, return to Federal prison, or rehabilitation while in prison." (Petitioner's brief at 11–12). The petition filed with Judge Hart, however, is at odds with this characterization, and is phrased so as to suggest that the full development of the facts requisite to the giving of the relief explicitly sought would, if indeed that relief is available at all, certainly require witnesses who are more easily available in Kansas.

The record indicates that Small, while on federal parole from Leavenworth to serve a sentence under a Colorado conviction for a confidence game, was convicted of two state offenses in Colorado while at liberty on a state appeal bond. One was driving while intoxicated, for which he appears to have served some time in jail; and the other was aggravated robbery, for which he served two years and eight months in state prison. In his petition, Small recited that he had been given a full parole revocation hearing at Leavenworth, Kansas. In his petition, he described that hearing as follows:

At the parole revocation hearing petitioner applied for immediate reparole. In support of such application, he requested consideration of (1) the length of incarceration under the intervening sentences, a period of 13 months in jail, and 2 years 8 months in state prison; (2) the punitive consequences of the detainer upon his status, opportunities for rehabilitation, mental outlook, and ability to prepare for a return to society; (3) his record as a prisoner during the intervening incarceration; and (4) his parole plans. Documentary evidence supporting this application for reparole included [listing evidence submitted to the parole revocation-reparole hearing].

He further recited that he was given a statement of reasons which consisted of a reference to his two Colorado convictions as the grounds for the parole revocation.

Small's contentions and plea are summed up in two places in his petition. In a section entitled "Petitioner's Contentions," Small stated:

"In revoking petitioner's parole and denying his immediate reparole, respondent relied solely upon the fact of intervening offenses, *failed to consider and evaluate petitioner's evidence,* and neglected to make a determination as to whether petitioner was a good parole risk. *The reasons given by respondent* violate petitioner's rights to due process as guaranteed by the 5th, 6th and 14th Amendments to the United States Constitution, as applicable to imprisoned felons. The reasons given manifest an arbitrary and capricious administrative standard, criterion, and policy; *indicate a failure to consider all relevant evidence;* and establish a fundamental unfairness, *ignoring of the concept of rehabilitation,* and disregarding of the need of society for protection and *whether further incarceration would serve any useful purpose.*" (Emphasis added).

In the bulk of his petition, Small attempted to explain why a statement of reasons was constitutionally mandated and why he, Small, should not have had his parole revoked. In his prayer for relief, Small said:

"Wherefore, petitioner prays for a writ of mandamus directing the respondent to show cause why *its written reasons* for revocation and denial of reparole given to petitioner should not be declared unconstitutional as a matter of law, and for an order to reparole petitioner forthwith." (Emphasis added).

The petition as presented to the district judge could, when construed most favorably to Small, be perhaps regarded as raising two questions: first, that the Board followed an unconstitutional practice of not considering or articulating certain factors in making parole decisions, for which a declaratory judgment was sought; and second, that the parole revocation and denial of reparole in Small's case was arbitrary and capricious in the light of the evidence of rehabilitation adduced. Although the former is perhaps no more easily litigated in Kansas than here, the second question appears to be the principal preoccupation of the petition, leading, as it is claimed to do, to the remedy of immediate reparole by judicial order. That second question essentially was whether the Board of Parole, in the face of the evidence offered by Small (consisting largely of letters from Colorado correctional officials and attorneys) of his satisfactory record while incarcerated in Colorado and the rehabilitative implications of that record, acted arbitrarily in revoking his parole and refusing to grant his request for immediate reparole.

The events relied on to support the allegation that the revocation and refusal to reparole was arbitrary and capricious occurred at the Colorado State Penitentiary. Small is a principal witness to these events and he, of course, is in Kansas. Further, should witnesses or files from the Colorado institution be necessary, as they presumably would be as a basis for a grant of the precise relief sought, the District of Kansas provides a patently more convenient forum. In these aspects, Small's case is very similar to the facts in *Rossello, supra,* which also challenged a parole revocation on grounds that certain facts known to the prisoner made the revocation inappropriate.[9] Thus the case as it was presented to the District Judge involved factual inquiries more easily to be pursued in Kansas than in the District of Columbia.

Petitioner notes that the main purpose of section 1404(a) is to afford defendants protection where maintenance of the action in the plaintiff's choice of forum will make litigation oppressively expensive, inconvenient, difficult or harassing to defend. *See Van Dusen v. Barrack, supra;* Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Petitioner also notes that the Board has its offices in the District of Columbia, that most hearing examiners are members of the Board and are based in Washington, and that the main Board files are here. From this he argues that the Board cannot be inconvenienced by suit in this district; and that, because plaintiff's choice of forum is normally to be preferred, Blake v. Capitol Greyhound Lines, 95 U.S.App.D.C. 334, 222 F.2d 25, 27 (1955); Wiren v. Laws, 90 U.S.App. D.C. 104, 194 F.2d 873, 875 (1951), cert. denied, 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954), transfer is not proper if the plaintiff is the only person inconvenienced by the forum.[10]

■ The essential element in this argument is the concept that the difficulties of transferring a prisoner to this

---

**9.** In *Rossello* these facts were prisoner's compliance with the parole procedures to a point past maximum supervision time; in *Small* the facts were good behavior while in the Colorado penitentiary.

**10.** There can be no question, of course, that transfer is appropriate on occasion for the convenience of third party witnesses.

district for hearing are an inconvenience only to the prisoner, and that he should be able to force the court to ignore such inconveniences. We believe, however, that the greater ease with which federal officials can travel to the prison to give evidence, as opposed to the difficulties of transporting the prisoner, is an appropriate factor to be considered, and one that the prisoner cannot eliminate by stating his preference for this forum.[11]

Petitioner also suggests that, to the extent his case can be taken to be concerned with national policy, the policy is that of an agency headquartered in Washington, D. C., and that therefore venue is most appropriate here. This argument is essentially based on the concept that somehow issues involving national policy are peculiarly appropriate for resolution by this forum. It relies on cases in which we allowed venue in this forum for actions against heads of national agencies where certain national policy decisions were clearly—and solely—involved. An examination of those cases, however, reveals that, far from creating a blanket rule that "national policy" cases should be brought here, the decisions required the case-by-case determination mandated by Van Dusen v. Barrack, *supra,* and merely noted as one factor to be considered that proof centering on national policy decisions may be peculiarly available here.

In Menard v. Mitchell, 139 U.S.App. D.C. 113, 115 n. 3, 430 F.2d 486, 488 n. 3 (1970), a case challenging certain FBI policies, we said:

Whatever might be the situation in other circumstances, the present record does not indicate that transfer would be appropriate. It appears that the only witnesses present when appellant was taken into custody were appellant and the two arresting officers. Although the officers are presumably still in California, appellant, who has the burden of proof, presently resides in Silver Spring, Maryland. Further-

more, also relevant at trial will be information regarding the practices of the FBI in disseminating its criminal identification records, . . . and witnesses regarding these matters would presumably be more accessible in the District of Columbia than in California. Appellant's choice of forum is entitled to some weight. And finally, it might be well that appellant, who appeared *pro se* in the District Court, would be unable to prosecute his suit were it transferred to the West Coast.

This discussion of the reasons for and against transfer indicates the range of considerations that are necessary to a proper case-by-case determination.

In Nestor v. Hershey, 138 U.S.App. D.C. 73, 425 F.2d 504, 522 (1969), we held that transfer was inappropriate for a suit involving a denial of draft deferment when the denial was based on a Regulation and a Memorandum issued by the director of the Selective Service. We noted, however, that "[w]here the role of the Director is not so immediate and direct as it is in the instant case, our District Court may properly determine that the controversy has no strong ties to this jurisdiction and, . . . transfer the action to a more appropriate forum." [Citing *Young, supra,* and noting with approval the transfer of another draft case, Thomas v. Hershey, (D.D.C. July 15, 1969).]

In Fine v. McGuire, 139 U.S.App.D.C. 341, 433 F.2d 499 (1970), a draft case apparently similar in all respects to *Nestor,* we held that *sua sponte* transfer without notice was an abuse of discretion:

"This is prima facie, at least, a reasonable choice by plaintiff and it cannot be overturned by the District Judge without giving plaintiff an opportunity to present facts that bear on convenience of parties and witnesses." *Id.* at 501–02.

11. Other factors relating to the availability of the prisoner, such as communication with counsel, will be discussed at length *infra.*

We noted that

"Nestor keeps open the possibility of transfer of an action where 'the role of the Director is not so immediate and direct as it is in the instant case' and 'the controversy has no strong ties to this jurisdiction.' However, this would depend on the issue involved in the individual case and would require an affirmative showing by the Selective Service System undercutting the presumed convenience of testing national headquarters' instructions at the seat of government."

*Id.* at 502 n. 3.

These opinions make clear that the existence of a national policy issue that may involve testimony by the policymakers is a factor to be considered by the district judge in determining whether transfer is appropriate under Section 1404(a). Where, however, there are present in the case other circumstances that make this an inconvenient forum, the advantages of litigating a national policy issue in the forum where that policy has been developed must be weighed against the factors suggesting transfer and, if the factors favoring transfer outweigh the value of litigating the policy issue here and the preference given the plaintiff's choice of forum, then the case should be transferred.

In the instant case, even assuming that a true national policy issue was tendered in the District Court, Small primarily raised and relied upon an issue that related to his particular circumstances and that certainly, as a basis for the specific relief sought, required evidence from himself and other persons better available in Kansas. Thus, in the instant case we find that transfer was appropriate in light of all the circumstances presented to the District Judge in the motion for stay of transfer and to this court in the briefs on appeal,[12] and that therefore no abuse of discretion occurred such as would require correction by mandamus.

Issuance of mandamus might be supported on the grounds that the district judge failed to give the petitioner an opportunity to present his arguments against transfer prior to the entry of the transfer order (the proper procedures will be discussed *infra*); we believe, however, that the prisoner's views on transfer were adequately presented in his motions to the District Judge to stay transfer and to reconsider the denial of a stay.

Mandamus is an extraordinary remedy, and is to be used only where essential in the interest of justice. Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); Platt v. Minnesota Mining Co., 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964); La Buy v. Howes Leather Co., 352 U.S. 249, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957); Bankers Life and Cas. Co. v. Holland, 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953); Fine v. McGuire, *supra*; Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 417 F.2d 728 (1969); A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439 (2d Cir. 1966) and cases cited therein. We find that in this case it is not warranted.

**IV**

Although it is perhaps impossible to develop any fixed general rules on when cases should be transferred, the cases before us today suggest that there may be some utility in an identification by this court of factors that generally will be relevant to a decision whether to transfer a particular prisoner petition under 28 U.S.C. § 1404(a), and of the procedures to be followed both in making such a determination in the first instance and in assuring an opportunity for appellate review.

**A. *Factors Affecting Transfer***

1. *Difficulty of communication with counsel.*

As this court recently stated in United States v. DeCoster, 159 U.S.App.

12. Two factors not presented to the District Judge, the availability of counsel and the fact that Small's case sounds in habeas corpus, also suggest that the case was appropriately transferred. *See* discussion of factors suggesting transfer, *infra*.

D.C. 326, 487 F.2d 1197, 1203 (1973), "Counsel should confer with his client without delay and as often as necessary to elicit matters of defense, or to ascertain that potential defenses are unavailable. Counsel should discuss fully potential strategies and tactical choices with his client." *See also* Coles v. Peyton, 389 F.2d 224 (4th Cir.), cert. denied, 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968); *Cf.* Hawk v. Olsen, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); American Bar Association, Standards for the Defense Function 3.1, 3.2, 5.1, 8.5 (Approved Draft 1971).

Most prisoner petitions for mandamus or declaratory judgment are filed *pro se*, with counsel appointed only after the district judge has determined that the claim made is not frivolous. A nonfrivolous claim, however, may be far from a claim that is fully presented or presented in its best light. Proper presentation will often require consultation between the appointed attorney and the prisoner to develop fully all of the relevant facts and arguments.

 When a case is litigated in the District of Columbia on behalf of a prisoner in a distant prison, the attorney is necessarily limited to the time-consum-

ing and inefficient communication provided by letters. Although such long-distance consultation may achieve a reasonable development of what the prisoner has defined as his case, it is likely that both important nuances and possible additional issues will be overlooked due to the problems of communication. There are also likely to be aggravated problems of meeting time limitations on filings. The prisoner's situation is thus unlike other civil cases filed in a distant forum, in which the plaintiff is likely to have consulted an attorney prior to filing, has knowingly undertaken the difficulties of communication, and is free to travel to the attorney if the need arises.[13] *See* Fine v. McGuire, 139 U.S. App.D.C. 341, 433 F.2d 499 (1970); Menard v. Mitchell, 139 U.S.App.D.C. 113, 430 F.2d 486 (1970); Nestor v. Hershey, 138 U.S.App.D.C. 73, 425 F.2d 504 (1969).[14] Transfer of the case to a forum where counsel is close at hand for consultation with the prisoner, will therefore generally be appropriate.[15]

2. *Difficulty of Transferring the Prisoner.*

 Many prisoner petitions will potentially involve testimony by the prison-

13. The prisoner mandamus or declaratory judgment action must also be distinguished from an action under 28 U.S.C. § 2255. Section 2255 provides in relevant part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence."

In reference to these actions, Congress has determined that the need for the records and witnesses in the district of the sentencing court mandates the bringing of the action in the sentencing court. This specific legislative determination that long-distance communication may be necessary does not apply in other types of prisoner petitions, such as habeas petitions under 28 U.S.C. § 2241, which are traditionally brought in the district of confinement, *see* Ahrens v. Clark, 335 U.S. 484,

499–500, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948). Nor do we find any such determination in the provision allowing mandamus and declaratory judgment actions to be brought in the District of Columbia.

14. We note that in *Fine, Menard,* and *Mitchell* (three of our principal cases discussing transfer under § 1404(a) and venue under § 1391(e)), the plaintiffs all lived in Maryland. They were thus close to their local counsel—a factor that in all likelihood influenced their decision to bring their actions in the District of Columbia.

15. An undue concentration of prisoner petitions in the District of Columbia also involves the infliction of an additional burden upon a bar which has carried, and continues to carry a very heavy appointive load. To the extent that counsel in the District of Columbia actively seek to represent distant complainants in certain cases, this problem is, of course, mitigated. Where counsel in Washington, D. C. voluntarily undertakes to represent a prisoner, the problems of communication also will be more likely to be overcome.

er as to events in which he participated. The burdens and dangers involved in transporting a prisoner across long distances are, in our opinion, a significant inconvenience to the Bureau of Prisons and will normally justify transfer.[16] There will, of course, be some cases in which it is clear that testimony by the prisoner will not be required, particularly those cases that challenge only a general policy, and, unlike *Small*, do not make reference to the particular situation of the prisoner. In such cases difficulty of transportation will be irrelevant.

### 3. Availability of Witnesses and Files.

 In some cases the claim will require testimony or files most easily obtained at or near the place of incarceration. In such cases, the district in which the institution is located will ordinarily be the more convenient forum.[17] Similarly, where the incident in dispute is an act leading to revocation of parole, a forum near to the place at which those acts occurred will be better than the District of Columbia. *See* Eisel v. Secretary of the Army, 155 U.S.App.D.C. 366, 477 F.2d 1251 (1971).

### 4. Complaints Under 28 U.S.C. §§ 2241 or 2255.

 It appears that many *pro se* petitions for writs of mandamus or for declaratory judgment in fact sound in habeas corpus and should properly be brought under 28 U.S.C. §§ 2255 or 2241. *See* Preiser v. Rodriguez, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). In both instances, where the prisoner was not sentenced and is not confined in the District of Columbia, venue is not likely to be proper here. *See* 28 U.S.C. § 2255; Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973); Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972); Schlanger v. Seamans, 401 U.S. 487, 91 S.Ct. 995, 28 L.Ed.2d 251 (1971); Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948); Reese v. United States Board of Parole, 162 U.S.App. D.C. 156, 498 F.2d 698 (1974); Eisel v. Secretary of the Army, *supra*; United States v. Wilson, 153 U.S.App.D.C. 104, 471 F.2d 1072, 1080 (1972); cert. denied, 410 U.S. 957, 93 S.Ct. 1431, 35 L.Ed.2d 691 (1973).[18]

 The Supreme Court has recently held that where the prisoner's custodian

---

**16.** For an indication of the difficulties of transfer, *see* United States v. LaVance Greene, 160 U.S.App.D.C. 21, 489 F.2d 1145 (1973); Theriault v. United States, 409 F.2d 1313 (5th Cir.), cert. denied, 396 U.S. 933, 90 S.Ct. 274, 24 L.Ed.2d 231 (1969).

**17.** We note that where the prisoner has been transferred from the institution in which the relevant acts occurred, this reason for transfer would not be applicable. Similarly, where a number of institutions are involved, no one forum may be the most convenient with respect to witnesses and files.

**18.** It is possible that under the reasoning in Preiser v. Rodriguez, *supra*, a prisoner bringing an action attacking the statute under which he was convicted is limited to his remedies under 28 U.S.C. § 2255. *See* 411 U.S. at 489, 93 S.Ct. 1827. Similarly, the prisoner may be limited in bringing an action attacking his confinement but not his conviction (as in a challenge to parole revocation or denial of good time credits, *see* Preiser v. Rodriguez,

*supra*; Morrissy v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), to the district in which his immediate custodian is found. *See* Braden v. 30th Judicial Circuit Court, *supra; but cf.* Eisel v. Secretary of the Army, *supra*; Ex Parte Hayes, 414 U.S. 1327, 94 S.Ct. 23, 38 L.Ed.2d 200 (1973) (order by Justice Douglas pointing out that the ultimate custodian of a serviceman in Europe was stationed in the District of Columbia).

We need not resolve, however, whether the venue provisions of 28 U.S.C. § 1391(e) are limited by 28 U.S.C. § 2255 and the doctrines governing federal habeas corpus, for even if the case can only be brought in the district of the custodian's residence or the sentencing court, transfer is still available to such district under 28 U.S.C. § 1406(a), which provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

is to be found in a different district than that of the prisoner's confinement, a habeas action should be brought in the district of the custodian's residence. Braden v. 30th Judicial Circuit Court, *supra.* Nevertheless, where the immediate custodian is found in the same district as that of the prisoner's confinement or residence, that district, rather than the residence of some distant, ultimate custodian, is normally to be preferred. *See* Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972); Eisel v. Secretary of the Army, *supra.*

In Braden v. 30th Judicial Circuit Court, *supra,* the Court said:

> In view of these developments since Ahrens v. Clark, we can no longer view that decision as establishing an inflexible jurisdictional rule, dictating the choice of an inconvenient forum even in a class of cases which could not have been foreseen at the time of our decision. Of course, in many instances the district in which petitioners are held will be the most convenient forum for the litigation of their claims. On the facts of *Ahrens* itself, for example, petitioners could have challenged their detention by bringing an action in the Eastern District of New York against the federal officials who confined them in that district. No reason is apparent why the District of Columbia would have been a more convenient forum, or why the Government should have undertaken the burden of transporting 120 detainees to a hearing in the District of Columbia. Under these circumstances, traditional principles of venue would mandate the bringing of the action in the Eastern District of New York, rather than the District of Columbia. Ahrens v. Clark stands for no broader proposition.

410 U.S. at 499–500, 93 S.Ct. at 1132.

In Schlanger v. Seamans, *supra,* the Court noted:

> Although by 28 U.S.C. § 1391(e) (1964 ed. Supp. V), Congress has provided for nationwide service of process in a "civil action in which each defendant is an officer or employee of the United States" the legislative history of that section is barren of any indication that Congress extended habeas corpus jurisdiction. That section was enacted to broaden the venue of civil actions which could previously have been brought only in the District of Columbia. *See* H.R.Rep.No.536, 87th Cong., 1st Sess., 1; S.R.Rep.No.1992, 87th Cong., 2d Sess., 2. Though habeas corpus is technically "civil," it is not automatically subject to all the rules governing ordinary civil actions. *See* Harris v. Nelson, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281.

401 U.S. at 490, n. 4, 91 S.Ct. at 997.

■ Thus, although it is possible to argue that the ultimate "custodian" of the prisoner resides in the District of Columbia for the purposes of an action under Section 2241, *see* Ex Parte Hayes, 414 U.S. 1328, 94 S.Ct. 23, 38 L.Ed.2d 200 (1974) (Order by Justice Douglas), we believe that there is no reason in these cases for the court to deviate from the traditional rule that the residence of the immediate custodian (and thus the place of confinement) is the correct forum. Similarly, actions governed by Section 2255 are to be brought in the sentencing court. In cases properly brought under either 28 U.S.C. §§ 2241 or 2255, the district court of filing must be free to transfer the case to the appropriate district.

5. *Speed of Final Resolution.*

■ Although congestion alone is not sufficient reason for transfer, relative docket congestion and potential speed of resolution is an appropriate factor to be considered. *See* Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973); A. Olinick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 445 (2d Cir. 1966); Chicago, Rock Island & Pac. RR Co. v. Igoe, 220 F.2d 299, 304 (7th Cir.), cert. denied, 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955).

B. *Countervailing Interests*

■ In certain cases in which the above-indicated factors would seem to

indicate transfer, the Bureau of Prisons, the Board of Parole, or the complainant may be able to demonstrate to the court that other factors dictate retention of the action. In particular, a party may be able to show that testimony by Bureau or Board members or District of Columbia staff will be necessary, and that maintenance of the cause here would facilitate the production of that testimony. This might occur, for example, where testimony is necessary to show whether a national regulation or policy had discriminatory motivations.

■ We also note that where the Bureau or the Board is granted a transfer for one of the above-mentioned reasons, or for the convenience of its members or staff, the courts may require that the distance of the forum will not be used as a means of denying access to materials or testimony that would have been available in the transferor district. *See* Sobell v. Reed, 327 F.Supp. 1294 (S.D.N.Y. 1971).

■ It is likely that cases will involve factors both for and against transfer. In such cases, the District Court must determine the correct action in light of all the factors. By way of example, cases may arise in which a number of prisoners from different institutions, represented by counsel in the District of Columbia, bring a suit in which the pleadings allege a pattern of action by the Bureau of Prisons that evidences an unwritten national policy, suggest that proof of such a pattern will be forthcoming at trial, and challenge that pattern as a denial of constitutional rights. In such a case we believe that although some transportation of prisoners might be necessary, the transportation involved would be no greater to this forum than to any one of the number of prison-related districts involved. Further, the proof of an unwritten national policy would be likely to require testimony by a number of officials stationed here in Washington. The presence of Washington counsel willing to undertake the necessary communications would provide assistance of counsel at least as adequate as if counsel in one prison-related district were to attempt to coordinate an action relating to a number of other prisons. In such an action the plaintiffs' choice of forum should be given substantial weight.

By contrast, a prisoner might bring a *pro se* suit in which he alleges that the prison officials in his prison failed to give him the benefit of a certain regulation and that there is a pattern of disobedience to such regulation. In this type of case, the district judge might appropriately determine that the case is essentially an individual complaint against an individual wrong, requiring direct consultation with counsel, consultation of local records, and use of local witnesses. In such a case, transfer of the complaint to the district of the plaintiff's incarceration is indicated.

## V

The process of case-by-case determination requires procedures better adapted to informing the judge of all of the relevant considerations than a simple *sua sponte* order without opportunity to respond. It is also essential that a procedure be established under which the parties are afforded a reasonable chance to seek review of district court action prior to the transfer.

### A. Procedure Prior to Entry of the Transfer Order

#### 1. Hearings.

In Fine v. McGuire, 139 U.S.App.D.C. 341, 433 F.2d 499 (1970), we said in reference to a transfer under 28 U.S.C. § 1404(a): "[A]s a matter of fundamental fairness the judge must accord an opportunity to be heard at least whenever there is a possibility that the hearing may develop facts bearing on the decision to be made." We noted, however, that "We need not here consider to what extent informality of procedure is appropriate for exceptional classes of cases where the convenience of the parties and witnesses are so clear-cut that a *per se* rule of law for transfer has evolved [citing *Young, supra*]."

Other circuits, outlining procedures for consideration of motions under 28 U.S.C. § 1404(a), have variously recognized the usefulness of legal memoranda, affidavits, and oral argument. *See* Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043 (3d Cir. 1973); Plum Tree, Inc. v. Stockment, 488 F.2d 754 (3d Cir. 1973); Technitrol, Inc. v. McManus, 405 F.2d 84 (8th Cir 1968), cert. denied, 394 U.S. 997, 89 S.Ct. 1591, 22 L.Ed.2d 775 (1969); A. Olnick & Sons v. Dempster Bros., Inc., 365 F.2d 439, 445 (2d Cir. 1966); Swindell-Dressler Corp. v. Dumbauld, 308 F.2d 267, 274 (3d Cir.1962); *Cf.* Monsanto Co. v. United Gas Pipe Line Co., 360 F.Supp. 1054 (D.D.C.1973).

■ Several of the factors we have outlined can be evaluated without the need of oral argument. This should not be taken to imply, however, that it is normally appropriate for the district judge to order transfer *sua sponte* without benefit of the parties' views.[19] Where neither party has requested transfer, it would appear that the forum is preferred by both. Accordingly, before ordering transfer the judge should, at minimum, issue an order to show cause why the case should not be transferred, and thereby afford the parties an opportunity to state their reasons for believing that this forum is most convenient or that the proposed alternative forum is inconvenient or not within the ambit of § 1404(a).[20] In some cases an evidentiary hearing may be necessary to develop relevant facts. In general we find ourselves in accord with the Third Circuit's recent statement:

> We do not hold that a hearing is necessarily required on every transfer motion, but where . . . the evidence and arguments supporting a transfer [are] in doubt, a hearing or conference would [be] desirable before the district court decide[s] the motion.

Furthermore, in making findings of fact on a transfer order, it would be helpful if the district court specifically related the evidence upon which it relies to the factors stated in 28 U.S.C. § 1404(a).

Plum Tree, Inc. v. Stockment, *supra*, 488 F.2d at 756 (1973).

2. *Notice.*

Adequate response to a judicially conceived purpose to transfer, or to a defendant's motion to transfer, of course requires notice of the proposed transfer. Under District Court Rule 1–9(d), responses to motions by parties must come within 10 days of service or "such other time as the court may direct." A prisoner must be given at least this time to respond. We note, moreover, that many of these petitions are filed *pro se*, and that notice of the proposed transfer will generally be sent to the prison (as opposed to being served on local counsel).

■ Both inefficiencies in the mail service and the fact that the prisoner may take somewhat longer to prepare an adequate response than would a trained attorney, suggest to us that in such cases a slightly longer time than provided for in the rule would strike a better balance between the need for expeditious justice and the necessity of allowing a careful response. Noting that the time in the mail for the papers in the cases before us varied between three days (Starnes' opposition to the motion to transfer) and fourteen days (Small's petition for writ of mandamus), we believe that a twenty-day period for a response would be adequate in almost all cases. Moreover, given that the actual physical transfer will be delayed for a period following the entry of the transfer order, such period of delay will allow the judge to consider any late-arriving briefs in opposition to the transfer which may have been de-

---

19. As we have stated in note 8 *supra*, an opportunity to respond in the form of a motion to the district judge to stay transfer should not be deemed an adequate substitute for notice and an opportunity to respond before entry of the order.

20. Section 1404(a) permits transfer only to a district where the action "might have been brought." *See* Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960).

layed by inefficiencies in the mail services.

### B. Procedure Subsequent to Entry of the Transfer Order

As has been discussed in reference to *Starnes*, once a record is transferred to a permissible forum in another district, this court loses jurisdiction over the matter. This circuit is, however, the only appropriate forum for direct review of the transfer order. Further, transferee courts have expressed a strong reluctance to review a transfer order indirectly by means of an order to retransfer. *See* Technitrol, Inc. v. McManus, 405 F.2d 84, 89 (8th Cir. 1968); Devex Corp. v. General Motors Corp., 263 F.Supp. 17, 23 (D.Del.1967); Gulf Research & Development Co. v. Schlumberger Well Sur. Corp., 98 F.Supp. 198 (D.Del.1951) mandamus denied sub nom. Gulf Research & Development Co. v. Leahy, 193 F.2d 302 (3d Cir. 1951), aff'd, 344 U.S. 861, 73 S.Ct. 102, 97 L.Ed. 668 (1952); Rinaldi v. The Elizabeth Bakke, 107 F.Supp. 975 (N.D.Cal.1952). Cf. Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960). Adequate and orderly review therefore requires that physical transfer be delayed for a period of time after entry of the transfer order, during which time review may be sought in the transferor circuit.

█ We note that the Southern District of New York has adopted a rule (General Rule 7) that provides for delay of physical transfer. *See generally* Farrell v. Wyatt, 408 F.2d 662 (2d Cir. 1969); Fisher v. United Airlines, Inc., 218 F.Supp. 223 (S.D.N.Y.1963). The New York rule provides for a stay of 5 days between entry of the transfer order and actual transfer. This rule, however, appears to have been designed to allow experienced local counsel to file in the appellate court. The special circumstances surrounding *pro se* prisoner petitions filed from afar suggest a somewhat longer period of time than the Southern District's five-day rule, or even our own District Court's 10-day practice. The latter, it seems to us, might well be increased to 20 days. On our own part, it is necessary that our Clerk's office be alert to the receipt within such 20-day period of papers seeking review of the transfer order and to the immediate communication to the District Court Clerk of a request to delay transfer until consideration of such papers can be completed by us.

---

The petition in No. 73–1034 is dismissed for lack of jurisdiction. The petition in No. 73–1827 is denied.

It is so ordered.

LEVENTHAL, Circuit Judge, with whom Chief Judge BAZELON and Circuit Judge SPOTTSWOOD W. ROBINSON, III, join, concurring in part and dissenting in part:

I concur fully with the opinion filed by Judge McGowan in Starnes v. McGuire.

Although my views generally coincide with the opinion in Small v. Hart, I disagree with the decision to affirm that case without affording petitioner a hearing prior to transfer of his case. Insead of affirming, I would remand for further consideration.

The principle requiring that the petitioner have notice from the court before his case is transferred is indubitable. I deem it requisite that this court reverse for failure to provide such notice. Presumably the court's affirmance reflects its view that the case should have been transferred. That may be, but that ruling should be made not by this court but by the district court, and by that court only after hearing from both sides. I would have voted to affirm a transfer entered after notice, but I am not prepared to say that the transfer was necessary as a matter of law.

The petitioner was entitled to an opportunity to persuade the district court in the exercise of its discretion to retain the case. After all, the petitioner was in a forum that Congress made permissible. If the petitioner were alerted that the court was considering a transfer of venue, he might have filed a response that

did not dwell so much on his individual situation but rather focused on the claim that it was only a particular application of a general national administrative policy fashioned by the Board of Parole.

One might say, what is the possible utility of remanding the case now, since the district judge has made it so clear what he thinks should be done. There is greater wisdom, I think, in our being rigorous to act only when the district court has moved in strict accordance with requisite procedure. This district judge is open-minded enough to change his view, even though publicly announced, if further procedure presents material that leads him to revise his view.*

A disposition without notice is the last place to invoke "harmless error," or any cognate doctrine. I hesitate to start sliding, backwards, I think, down this slippery slope.

---

* I take note that this district judge, after giving summary judgment to the Government in a case that was reversed and remanded for trial, was persuaded by the material evidenced at trial that he should modify the judgment he previously entered. A Quaker Action Group, Inc. v. Morton, 362 F.Supp. 1161, (1973).