# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 24, 2006        Decided July 7, 2006

No. 04-5300

IN RE: BILLY G. ASEMANI
PETITIONER

On Petition for Writ of Mandamus
(No. 04cv00485)

*Jeffrey T. Green*, appointed by the court, argued the cause as *amicus curiae* for the petitioner.

*Patricia A. Heffernan*, Assistant United States Attorney, argued the cause for the respondent. *Kenneth L. Wainstein*, United States Attorney, and *Roy W. McLeese, III*, Assistant United States Attorney, were on brief.

Before: GINSBURG, *Chief Judge*, and SENTELLE and HENDERSON, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellant Ghafour "Billy" Asemani, born in Iran, currently in prison and scheduled to be deported from this country pursuant to a removal order entered by the Board of Immigration Appeals (BIA), petitions for a writ of mandamus seeking to undo the district court's transfer of his habeas corpus petition for relief

from the BIA's removal order to the Middle District of Pennsylvania. For the following reasons, we conclude that we are without jurisdiction to consider Asemani's petition and, accordingly, dismiss the petition.

I.

Asemani has filed habeas petitions challenging his detention and impending removal by the Department of Homeland Security (DHS) in four different district courts, creating a procedural tangle.[1] Asemani entered the United States on a student visa, married a lawful permanent resident (LPR) in 1991, registered for selective service the same year and gained LPR status himself in 1994. He filed a declaration of intent to apply for U.S. citizenship in April 1996 and an initial application for naturalization in August 1997 but completed neither. In October 1999 Asemani was indicted on twelve counts of criminal health-care fraud for practicing dentistry without a license. After his indictment he went to Iran.[2] Upon his return to the U.S. in October 2000, he pleaded guilty to eleven counts and was sentenced to thirty months' imprisonment in May 2001. While Asemani was in federal custody, the

---

[1]*See Asemani v. Ridge*, No. 03-CV-6833 (E.D. Pa. Oct. 1, 2004); *Asemani v. Ridge*, No. 3-CV-04-0135 (M.D. Pa. Jan. 30, 2004); *Asemani v. DHS*, No. 04-CV-00485 (D.D.C. filed Mar. 23, 2004), Supplemental App. to Amicus for Appellant's Br. (SA) 1; *Asemani v. BICE*, No. 05-CV-00987 (D. Md. filed Apr. 11, 2005), R. Material Submitted by Resp't (R.), Tab 15.

[2]An immigration judge found Asemani went to Iran to avoid prosecution on the fraud charges. SA 17.

Bureau of Immigration and Customs Enforcement (BICE)[3] instituted removal proceedings against him in Philadelphia, charging him as an alien deportable under the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(i)(I), for having committed crimes involving moral turpitude within ten years of acquiring LPR status. Supplemental App. to Amicus for Appellant's Br. (SA) 15.

In September 2001 Asemani filed suit against Iran under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §§ 1602 *et seq.*, alleging that, while in that country, he was tortured and falsely detained by Iranian government officials because of his religious beliefs. *Asemani v. Islamic Republic of Iran*, 266 F. Supp. 2d 24 (D.D.C. 2003). Only United States nationals can bring an action against a foreign government for such conduct under the FSIA.[4] The district court, reviewing Asemani's length of residence in the U.S., his registration for selective service and his incomplete applications for U.S. citizenship, determined he was a U.S. national and therefore had standing to bring a claim

---

[3]BICE was formerly the Immigration and Naturalization Service (INS). It is now part of DHS and has since been renamed U.S. Immigration and Customs Enforcement (ICE).

[4]FSIA provides that "a foreign state shall not be immune from the jurisdiction of courts of the United States" from suits "in which money damages are sought" for "personal injury or death that was caused by an act of torture" unless, inter alia, "neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred." 28 U.S.C. § 1605(a)(7)(B)(ii). The Immigration and Nationality Act defines "national of the United States" as either a United States citizen or "a person who, though not a citizen of the United States, owes permanent allegiance to the United States." 8 U.S.C. § 1101(a)(22).

under the FSIA. *Id.* at 27. The district court, however, specifically denied without prejudice Asemani's motion for a judicial declaration of nationality under 8 U.S.C. § 1503(a) and 28 U.S.C. § 2201.[5] *See id.* ("[P]laintiff has demonstrated his permanent allegiance to the United States sufficient to constitute him a 'national' *within the meaning of the FSIA*. . . . That is all that this Court must decide at this time for purposes of the current case.") (emphasis added).

After the district court's determination, Asemani, whom DHS had taken into custody, moved to terminate the removal proceedings based on the district court's determination that he was a U.S. national, arguing BICE could not remove him because he was not subject to its jurisdiction.[6] On September 5, 2003 an immigration judge agreed, granting his motion and ordering his release from DHS custody. SA 18. DHS appealed the immigration judge's determination, SA 21, and on December 12, 2003 the BIA reversed and vacated the immigration judge's decision, concluding that the district court's determination as to

---

[5] 8 U.S.C. § 1503(a) allows "any person who is within the United States claim[ing] a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States" to bring an action for a declaratory judgment under 28 U.S.C. § 2201 "against the head of such department or independent agency for a judgment declaring him to be a national of the United States."

[6] Because DHS took custody of Asemani, his immigration case was transferred from Philadelphia, where it was proceeding while he was in prison for health care fraud, to York, Pennsylvania. *See* SA 15, 17–18.

Asemani's status as a national applied only to the FSIA. SA 23-28.

On March 23, 2004, while the immigration proceedings were ongoing and before a final order of removal issued, Asemani filed a petition for a writ of habeas corpus in the D.C. district court. SA 01. He argued that DHS had unlawfully detained him under section 236 of the INA, claiming that section 236 applied only to "foreign 'aliens.'" SA 02. Because he was not an alien, Asemani argued, his continued confinement was unlawful.[7] In response the government filed a motion to transfer the case to the Eastern District of Pennsylvania. U.S.'s Mot. to Transfer Pet. for Writ of Habeas Corpus, R. Material Submitted by Resp't (R.) Tab 5. Transfer was warranted, DHS claimed, because Asemani was incarcerated in the Eastern District of Pennsylvania and therefore the D.C. district court lacked jurisdiction over his custodian.[8] *Id.* at 2 (citing *In re Tripati*, 836 F.2d 1406, 1407 (D.C. Cir. 1988) ("A habeas petition may be adjudicated only in the district in which [petitioner's] immediate custodian, his warden, is located.")). Meanwhile, on June 1, 2004, the U.S. Immigration Court in York, Pennsylvania ordered Asemani's removal from the United States. R. Tab 8.

On July 16, 2004 the district court granted DHS's motion to transfer Asemani's habeas corpus case to the Eastern District of

---

[7]Section 236 of the Immigration and Nationality Act provides that "[t]he Attorney General shall take into custody any foreign alien who is deportable" for, inter alia, having been "convicted of a crime involving moral turpitude committed within . . . 10 years in the case of an alien provided lawful permanent resident status." 8 U.S.C. §§ 1226(c), 1227(a)(2)(A)(i)(I).

[8]A writ of habeas corpus must be "directed to the person having custody of the person detained." 28 U.S.C. § 2243.

Pennsylvania. *Asemani v. DHS*, No. 04-CV-00485 (D.D.C. July 16, 2004), reprinted at R. Tab 6. In so doing, the court noted that the general rule "that the proper respondent in federal habeas cases is the petitioner's warden" compelled transfer to the federal judicial district in which Asemani was confined at the time he filed his habeas petition. *Id.* at 2. On August 18 Asemani filed a "Motion for Leave of Court to Reveal a Significant Procedural Defect in the Court's July 16, 2004 Transfer Order," which alleged that the July 16 order was flawed because at the time he filed his petition he was being held in the *Middle* District of Pennsylvania. R. Tab 7. In an August 18, 2004 order the district court amended its July 16, 2004 transfer order, ordering the case transferred to the Middle District of Pennsylvania.[9] Order on Pending Mots. and Am. Transfer Order, R. Tab 1. Pursuant to its amended transfer order the district court electronically transferred the case to the Middle District of Pennsylvania on August 26. The day after the electronic transfer, on August 27, the district court received and docketed a "notice of appeal in the form of an emergency petition for a supervisory writ of mandamus," in which Asemani stated his intent to contest the transfer order via a petition for writ of mandamus. On the same day, August 27, this court received and docketed Asemani's petition for a writ of mandamus. Emergency Pet. for Supervisory Writ of Mandamus Pursuant to All Writs Act, 28 U.S.C. § 1651(a) (mandamus petition). In his petition Asemani claimed that the DHS Secretary was the proper respondent because DHS dictated the

---

[9] When he filed his petition, Asemani was incarcerated at a correctional facility in Carbon County, Pennsylvania, located in the Middle District of Pennsylvania. He was subsequently transferred to Berks County, Pennsylvania, located in the Eastern District. R. Tab 6.

conditions of his confinement and that the district court erred in transferring his case. *Id.* at 3. On September 16, Asemani filed an emergency motion with this court, asking us to order the district court to "retrieve" its transfer order. Emergency Mot. to Compel the Court Below to Reverse its Premature Electronic Transfer of the Case, R. Tab 3. (Emergency Motion). He challenged the validity of the electronic transfer "given the fact that it stands in violation of the Court's twenty-day automatic abeyance rule." R. Tab 3 at 3–4 (citing *Starnes v. McGuire*, 512 F.2d 918 (D.C. Cir. 1974)). By order dated October 19, 2005, this court referred Asemani's filings to a merits panel, instructing the parties to address, inter alia, the issues raised in Asemani's mandamus petition and in his Emergency Motion.

## II.

A petitioner seeking mandamus must show his "right to issuance of the writ is clear and indisputable" and that "no other adequate means to attain the relief exist[s]." *In re: Sealed Case*, 151 F.3d 1059, 1063 (D.C. Cir. 1998) (quotations omitted). Before considering whether mandamus relief is appropriate, however, we must be certain of our jurisdiction. *See In re: Executive Office of the President*, 215 F.3d 20, 25 (D.C. Cir. 2000) (dismissing mandamus petition because jurisdiction lacking). Because Asemani's habeas petition was correctly transferred to the Middle District of Pennsylvania, we are without jurisdiction over his petition for mandamus relief.

In *In re Sosa*, 712 F.2d 1479 (D.C. Cir. 1983), Ramon Sosa petitioned for a writ of mandamus to compel vacatur of the district court's order transferring his underlying case to the Western District of Oklahoma. On March 11, 1983 the district court ordered Sosa to show cause why his complaint should not be transferred and ordered the transfer to the Oklahoma district court one week later; on April 25 the record was physically

transferred by court order. Sosa filed his petition for mandamus relief six weeks thereafter. We dismissed the petition for lack of jurisdiction because the "physical transfer of the original papers" in the case to a permissible transferee forum deprived us of jurisdiction to review the transfer. *Id.* at 1480. Sosa sought vacatur of the D.C. district court order of transfer but only the Oklahoma transferee court had jurisdiction once the transfer was effected. *Id.*; *see also Starnes*, 512 F.2d at 924 ("[P]hysical transfer of the original papers in a case to a permissible transferee forum deprives the transferor circuit of jurisdiction to review the transfer."). Here the district court transferred Asemani's habeas petition to the Middle District of Pennsylvania on August 26, *see* Order, *Asemani v. DHS*, No. 04-CV-00485 (D.D.C. Sept. 14, 2004), R. 10, the day before we docketed his mandamus petition on August 27, *see* U.S. Court of Appeals for the D.C. Circuit, Docket Sheet No. 04-5300, R. Tab 4, which deprives us of jurisdiction to review the transfer.

The *Sosa* rule is subject to one exception. In *In re Briscoe*, 976 F.2d 1425 (D.C. Cir. 1992), we noted that where there was a "substantial issue whether the district court had power to order the transfer, we will not consider the clerk's compliance with the order as destroying our jurisdiction." *Id.* at 1427 (internal quotation omitted). Seeking to come within the *Briscoe* exception, Asemani makes two arguments that the district court was without authority to transfer his case; neither has merit. Asemani's first argument—that the district court was without authority to transfer because, under Rule 4(c)(1) of the Federal Rules of Appellate Procedure, Asemani's notice of appeal is considered filed on the date it is placed in the prison mail system rather than the postmark date—is waived because it was made for the first time in his reply brief. *See Rollins Envtl. Servs. v. EPA*, 937 F.2d 649, 653 n.2 (D.C. Cir. 1991) ("Issues may not be raised for the first time in a reply brief."). His second

argument—that the district court's transfer failed to comply with the procedural rule set out in *Starnes*, 512 F.2d at 934-35, recommending a twenty-day delay between the transfer order and the physical transfer of a prisoner's case—was included in his September 16, 2004 Emergency Motion but not in his mandamus petition. *See* Emergency Motion, R. Tab 3, at 3–4.

Even if we read Asemani's *pro se* pleadings liberally and consider the *Starnes* argument as part of his petition for mandamus relief, however, it does not raise a "substantial issue" regarding the district court's transfer power. The *Starnes* rule was adopted in order to "allow the [transferring] judge to consider any late-arriving briefs in opposition to the transfer which may have been delayed by inefficiencies in the [prison] mail services." *Starnes*, 512 F.2d at 934-35; *see also Briscoe*, 976 F.2d at 1427 (transfer before *Starnes* twenty-day period runs "*ordinarily* would deprive [the court] of jurisdiction") (emphasis added); *cf. In re Nine Mile Ltd.*, 673 F.2d 242, 243 (8th Cir. 1982) (mandamus relief granted to petitioner in diversity case seeking review of transfer because transfer effected on same day as transfer order; "physical transfer of the file should be delayed for a period of time after entry of the transfer order so that review may be sought in the transferor circuit") (citing *Starnes*). Although only eight days elapsed between the electronic transfer of Asemani's case on August 26 and the *amended* transfer order of August 18, the *original* transfer order was entered on July 16, 2004—forty-one days before the case was electronically transferred. In other words, the district court had plenty of time to consider a brief in opposition to the transfer. In fact it considered just such a submission, namely, Asemani's motion to amend the transfer order to name "an appropriate transferee court." *See* R. Tab 7 at 5. It stretches the *Starnes* rule beyond its limit to allow a petitioner like Asemani, the author of more than a dozen *pro se* filings in this case, to claim he was not

given enough time to respond to or seek review of the transfer order.[10]

For the foregoing reasons, Asemani's petition is dismissed.

*So ordered.*

---

[10]Asemani challenges the electronic transfer of his case; in fact, at the time of oral argument before us the district court's docket sheet did not indicate a physical transfer of Asemani's paper file. *See Asemani v. DHS*, 04-CV-00485, Docket Sheet, 8/26/04 (showing electronic transfer to Middle District of Pennsylvania). Asemani's mandamus petition does not challenge the *completeness* of the transfer, however, but instead the *legitimacy* of a *completed* transfer. *See Drabik v. Murphy*, 246 F.2d 408, 409 (2d Cir. 1957) (where plaintiff served motion on defendant "after the papers had been lodged in the office of the clerk of the District Court for the Eastern District of Louisiana . . . . the District Court for the Southern District of New York had already lost all jurisdiction over the action *because the transfer was then complete*") (emphasis added).