**MONSANTO COMPANY, Plaintiff,**

v.

**UNITED GAS PIPE LINE COMPANY, Defendant.**

**Civ. A. No. 2545–72.**

United States District Court,
District of Columbia.

June 25, 1973.

James J. Bierbower, Washington, D. C., John T. Miller, Washington, D. C., for plaintiff.

W. DeVier Pierson, Peter Levin, Washington, D. C., for defendant.

## MEMORANDUM AND ORDER

WILLIAM B. JONES, District Judge.

This civil action arises out of the natural gas shortage now facing the defendant, the United Gas Pipe Line Company [United], and other suppliers of natural gas. The plaintiff, the Monsanto Company [Monsanto], is a direct industrial user of United's gas at Monsanto's nylon yarn manufacturing facility in Pensacola, Florida. Monsanto has brought this action claiming both several violations by United of its contract to supply gas and a violation of the Sherman Act by United in the formulation, execution, and performance of the contract.

This action was filed on December 22, 1972. On January 4, 1973, United instituted proceedings with the Federal Power Commission [FPC] to abandon service to Monsanto under section 7(b) of the Natural Gas Act, 15 U.S.C. § 717f(b) (1970). United Gas Pipe Line Company, Docket No. CP 73–179. On January 18, 1973, United moved to stay this action pending the abandonment proceeding before the FPC. At the oral hearing on the motion on March 23, 1973, the Court raised the possibility of a sua sponte transfer of this case to the United States District Court for the Northern District of Florida, and requested the submission of briefs on the propriety of a transfer, which both parties filed. The Court holds that a transfer of this case to the Northern District of Florida would be unwarranted. The Court further holds that proceedings should be stayed in a manner detailed later in this memorandum.

Briefly, the facts, as set forth in the complaint, are as follows. United has supplied the natural gas to Monsanto's Pensacola plant since the plant began operating in 1953. On September 15, 1967, the parties entered into a long-term gas sales agreement for Monsanto's natural gas requirements for both raw materials and fuel at Pensacola. Article XIV(A) of that contract sets rates through January 1, 1973. Article XIV (B) calls for the determination of the price to be paid for the five-year period commencing January 1, 1973. If an agreement is not reached according to the terms of that Article, service is to terminate with a provision for 18 months' temporary service.

On September 22, 1972, within the time prescribed by Article XIV(B), United submitted two proposals for new rates, one purporting to be in compliance with the Article and calling for a 165 percent price hike (proposal A), and the other seeking an amendment to the original contract (proposal B). Monsanto alleges that proposal A is not in accord with the contract because it proposes rates for one year only, rather than five years. Monsanto attempted to get a more definite proposal, but United refused and informed Monsanto that it would terminate service unless a proposal was accepted. Subsequent to the filing of this case, Monsanto accepted proposal A.

Count I of the Complaint seeks a declaratory judgment that proposal A did not meet the requirements of Article XIV(B), that Monsanto had no duty to accept either proposal, and that the old rate should continue until new valid proposals are made. Count II alleges that proposal A was a bad faith attempt by United to capitalize on its past failure to attempt to forestall the current natural gas shortage, or at least warn its customers of the possibility of a shortage, and seeks a declaration that the old rate is in effect because no valid new rate proposal was made. Count III asks for

a declaratory judgment that the gas sales contract is unconscionable and void if United's proposal is valid. Count IV requests a declaratory judgment that, in accord with the common law of Florida on public utilities, United may charge only reasonable rates and that those sought under proposal A are not reasonable. Count V asks for an injunction forbidding United from seeking an abandonment of service to Monsanto from the FPC. United has already initiated abandonment proceedings, *supra*. Finally, Count VI alleges that Monsanto was induced to enter into the long-term gas sales contract for service which would only be available from United. This and other contracts are alleged to have been entered into in order to gain a monopoly on the distribution of natural gas in the area of the Pensacola plant and in violation of the antitrust laws. Monsanto also alleges that potential gas shortages were concealed so that alternative fuel supplies were not developed. Now that competition allegedly has been excluded and Monsanto is totally dependent upon United, United is alleged to be seeking exorbitant rates as an exercise of its monopolistic power.

■ Although the usual procedure for the transfer of a case under 28 U.S. C. § 1404(a) (1970) would be for one of the parties to file a motion, the Court may initiate consideration of the convenience factors under that section. Fine v. McGuire, 139 U.S.App.D.C. 341, 343, 433 F.2d 499, 501 (1970). After initiating this consideration at the March 23, 1973, hearing, both parties submitted memoranda on the issue. Monsanto, although it did not file a formal motion to transfer, indicated that Florida would be a more convenient forum for its witnesses. United opposed transfer under the principles of Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), which was decided under principles of *forum non conveniens*, but which has been held to enumerate the factors relevant under section 1404(a). Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

■■ Most relevant among the factors enumerated in *Gulf Oil* are ease of access to proof, the cost of obtaining the attendance of willing witnesses, and familiarity with state law. United, through the affidavit of William B. Cassin, its vice-president and general counsel, states that to its knowledge, all its records relevant to this suit are either at its Washington, D.C., office, in connection with the FPC proceedings, or at its Shreveport, Louisiana, operational office or its Houston, Texas, executive offices. No records are at its Pensacola office, which employs only nine persons, all in either maintenance or related work capacities. These employees have no executive or administrative duties. United further states that it anticipates that no witnesses from Florida will be called, and supports this through a filing of the prepared evidence it has presented to the FPC in the abandonment proceeding. None of those witnesses are from Florida, and some are from the Washington, D.C. area. Although Florida law may have to be construed in evaluating Monsanto's contract claims, difficulties in construing foreign law are of themselves insufficient to warrant a transfer. E. g., Breindel v. Levitt & Sons, Inc., 294 F.Supp. 42, 44 (E.D.N.Y.1968). Although Monsanto has claimed Florida would be more convenient for its witnesses, it has made no showing of that convenience. Therefore, the Court will not sua sponte transfer this action.

United's initial motion to stay was premised on the exercise of the FPC's primary jurisdiction over the discontinuation of service to Monsanto through abandonment proceedings. Monsanto, however, does not challenge the contention that the FPC will determine the amount of gas actually to be delivered to Monsanto regardless of contractual obligations. FPC v. Louisiana Power & Light Co., 406 U.S. 621, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972) (Plaintiff's Memorandum in Opposition to Motion to Stay 2). Monsanto argues that this Court will determine the rate to be paid for that gas, in whatever amount re-

ceived, and that it will determine any damages arising from any breach of contract or violation of the antitrust laws.

Although United acknowledges that the FPC cannot set the rate which Monsanto has to pay United for its gas, FPC v. Louisiana Power & Light Co., 406 U.S. 621, 640–641, 92 S.Ct. 1827, 32 L.Ed.2d 369 (1972), it argues that a stay should be granted because the FPC will consider the price of service in deciding whether to allow abandonment of service to Monsanto. United Gas Pipe Line Co., Docket No. CP 73–117, et al., at 2–3 (Feb. 12, 1973). Moreover, United points out that the Monsanto abandonment proceeding is being expedited before the FPC, and the FPC may soon reach an abandonment decision.

█ This Court recognizes that the FPC has no special contract expertise, and that courts should not defer to it in that area. Texas Gas Transmission Corp. v. Shell Oil Co., 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208 (1960). In granting a stay, however, the Court is not deferring to any price decision which the FPC may reach. Rather it is staying its hand to allow the FPC to make the abandonment decision which both parties acknowledge that only it can make. The evidence and findings of those proceedings, although not binding, may and probably will be useful to the Court in its determination of the issue of this case. Judicial economy dictates that the same factual dispute not go forward simultaneously if the FPC determination may aid the resolution of the matter through determining the quantity of gas on which potential damages will need to be computed. An FPC determination on abandonment will put this case in a far more concrete context. Monsanto in no way will be prevented from making any claims for damages at whatever gas delivery schedule is determined.

█ The Court, however, recognizes that delay in the abandonment decision by the FPC may materially harm Mon-

santo in the prosecution of this case. Moreover, the FPC has no power to insulate utilities under its regulation from the operation of the antitrust acts, or to determine whether an antitrust violation has taken place. Otter Tail Power Co. v. United States, 410 U.S. 425, 93 S.Ct. 1022, 35 L.Ed.2d 35 (1973). Therefore, the Court will stay this suit only until December 22, 1973, or until the completion of the abandonment proceeding before the FPC administrative law judge, if that proceeding is completed before that date. Of course, at the expiration of the stay, either party may move for a continuation of the stay based on the facts and circumstances present at that time.