SCHMID LABORATORIES, INC., Plaintiff,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Defendants.

Civ. A. No. 84–3718.

United States District Court, District of Columbia.

March 27, 1986.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

Schmid Laboratories, a manufacturer and distributor of an intra-uterine (IUD) birth control device which has given rise to a spate of lawsuits, brought this breach of contract action against two of its insurance companies, Hartford and Centaur. Plaintiff claims that the insurers breached their contractual duty to defend it against a series of tort actions brought by women who allegedly were injured using Schmid's IUD. Currently pending before the Court are a number of motions,[1] including a motion by both defendants to transfer this action to the Southern District of New York. For the reasons stated below, the Court grants the motion to transfer, and it necessarily leaves resolution of the remaining motions to the transferee court.[2]

### I

The plaintiff is a New Jersey corporation with its principal place of business in New Jersey, roughly 15 miles from New York City. From approximately 1970 to 1984, Schmid manufactured and sold the Saf-T-Coil, an IUD. Schmid has been sued by a number of women[3] who allege serious bodily injury as a result of using the Saf-T-Coil. These plaintiffs have alleged that at some time between 1970 and 1984, they had a Saf-T-Coil inserted and eventually suffered resulting bodily injury.

Schmid was insured by 15 different insurance companies during the 1970–1984 period, including both defendants. Hartford insured Schmid from April 1971 to April 1975, and Centaur insured Schmid from April 1983 to April 1984. Both insurance contracts contain a standard "duty to defend" clause which requires the insurance company to defend its insured against any lawsuit seeking damages for bodily injury within the insurance policy's coverage.

This lawsuit is confined to the issue of whether these insurance carriers breached their duty to defend Schmid when they refused the tender of defense from Schmid on the underlying tort claims. The resolution of this issue depends on a determination of when the duty to defend is triggered. Under the policy terms, the duty is triggered for bodily injuries incurred during the policy period. In claims alleging bodily injuries which have resulted from exposure to a harmful product over an extended period of time, such as IUDs or asbestos,[4] the question of when the bodily injury occurred within the meaning of the policy becomes very complex.[5]

The dispute between Schmid and the two defendants in this lawsuit in its simplest form is a dispute over how to determine when the injury occurred for purposes of determining which insurer had coverage

---

1. These include a motion for leave to file a cross-claim and a third-party party claim, a motion to extend the discovery period, and an appeal from the magistrate's discovery order.

2. The motion to transfer was fully briefed by the parties, and the Court heard oral argument thereon.

3. At the time Schmid's complaint was filed, at least 17 separate actions had been instituted.

4. *See Keene Corp. v. Insurance Company of North America,* 667 F.2d 1034 (D.C.Cir.1981).

5. The various courts which have addressed this legal issue have resolved it in widely varying ways, roughly falling into three categories. First, some courts hold that the initial exposure to the defective product, or the insertion of the IUD, is the point at which bodily injury occurs and coverage is triggered. *See, e.g., Insurance Company of North America v. Forty-Eight Insulations,* 633 F.2d 1212 (6th Cir.1980). Others hold that coverage is triggered when the injury manifests itself, or when the user actually develops physical problems from the IUD. *See, e.g., Eagle-Picher Industries v. Liberty Mutual Insurance Co.,* 682 F.2d 12 (1st Cir.1982). The final and broadest formulation, adopted by the *Keene* court in this Circuit (*see infra*), holds that the injury is continuously inflicted from the date of insertion to the date of final manifestation, thereby triggering the coverage of any and all insurers holding policies over that entire period of time. *Keene Corp. v. Insurance Company of North America,* 667 F.2d at 1047.

for the injury, and thus a duty to defend. Hartford and Centaur refused to defend Schmid on the theory that their respective duties to defend are narrowly confined. Schmid then filed suit in this Court against both defendants for breach of contract and bad faith.

## II

Defendants argue that this action should be transferred to the Southern District of New York under 28 U.S.C. § 1404(a). A District Court may transfer an action to any other district where it might have been brought originally if the transfer would serve the convenience of the parties and witnesses and is in the interest of justice.[6] In considering the merits of a transfer motion, the Court may consider factors subsumed by purpose of the statute as well as the factors enumerated in section 1404(a). *SEC v. Page Airways*, 464 F.Supp. 461, 463 (D.D.C.1978).

Defendants argue that this case should be transferred for two reasons. First, they contend that neither the underlying tort actions nor the contract action in the case at bar provide any factual nexus with the District of Columbia, and that it would therefore be inconvenient to try the case in the District of Columbia as well as to be expensive for all litigants. Second, defendants argue that plaintiff engaged in blatant forum shopping by filing suit in the District of Columbia and that the interest of justice would be ill-served by allowing it to benefit from such activity.

As noted, defendants' first point is that the District of Columbia is an inappropriate forum because none of the underlying tort actions were brought here; no part of the insurance contracts at issue were negotiated, entered into, or performed here; none

of Schmid's insurance companies are incorporated or maintain head offices here;[7] and none of the witnesses or records are located here. Plaintiff responds that since this case is national in scope, there is no one "appropriate" forum, and that New York is no more convenient a forum than the District of Columbia. Consequently, Schmid argues, plaintiff's choice of forum is entitled to substantial weight and should not be disturbed by the Court.

The Court finds that, on the bases enumerated above, the defendants have made a showing that the case has a closer factual relationship with New York than it does with the District of Columbia. If that factor were the only consideration in a section 1404(a) analysis, however, that showing would not alone justify transferring the case to New York because the nationwide scope of the case reduces somewhat the importance of those factual considerations.[8] However, the Court's inquiry does not end there.

Defendants' second and much more persuasive argument is that transfer is warranted in the interest of justice because Schmid engaged in forum shopping in choosing to file this lawsuit in the District of Columbia. Defendants contend that Schmid filed the lawsuit in the District of Columbia only in order to benefit from this Circuit's ruling in *Keene Corporation v. Insurance Company of North America*, 667 F.2d 1034 (D.C.Cir.1981). That case, involving a very similar contractual dispute between an insured and its insurer over the duty to defend in underlying tort claims arising from asbestos exposure, held that the duty to defend in cases involving extended exposure injuries is extremely broad.[9] But the courts in virtually every

---

**6.** Neither party disputes that venue is proper in the District of Columbia or that the case could have originally been brought in the Southern District of New York.

**7.** Centaur is an Illinois corporation with its headquarters in Chicago, and Hartford is a Connecticut corporation with its headquarters in Hartford.

**8.** While there are clearly more witnesses, business offices, and documents in New York than in the District of Columbia, the bulk of the evidence in this case will come neither from New York nor from the District of Columbia, but from many different states across the nation.

**9.** See note 5, *supra*.

other jurisdiction which have addressed the issue have decided that the duty to defend in such cases is a much narrower one.[10]

The plaintiff does not deny that it filed its lawsuit in the District of Columbia to take advantage of the broad rule of law established in *Keene,* but it argues that the general presumption favoring the plaintiff's choice of forum is not negated simply because it filed here to take advantage of favorable precedent.

The court rejects Schmid's argument. Initially, it is well established that where the plaintiff's forum choice has no factual nexus with the lawsuit, as is the case here, its choice of forum may be accorded less weight in a section 1404(a) analysis. *Franklin v. Southern Railway,* 523 F.Supp. 521, 524 (D.D.C.1981); *see also, Credit Alliance Corp. v. Nationwide Mutual Insurance Co.,* 433 F.Supp. 688, 689 (S.D.N.Y.1977). More importantly, the transfer provisions in the U.S. Code, which grew out of the common law doctrine of *forum non conveniens,* were in part intended to prevent forum shopping. *Cheeseman v. Carey,* 485 F.Supp. 203, 214–15 (S.D.N.Y.1980). This Court cannot find that it is in the interest of justice to encourage, or even allow, a plaintiff to select one district exclusively or primarily to obtain or avoid specific precedents, particularly in circumstances such as these where the relevant law is unsettled and the choice of forum may well dictate the outcome of the case. *See Cheeseman v. Carey,* 485 F.Supp. 203, 215 (S.D.N.Y.1980).[11]

While choice of an advantageous forum alone might not warrant a transfer, as plaintiff asserts, when such forum shopping is considered with the other factors in this case, *i.e.,* the complete lack of nexus with the District of Columbia and the relatively more convenient forum available in the Southern District of New York, it is clear that this case should be transferred to that district.

Accordingly, for the reasons stated herein, it is this 27th day of March, 1986

ORDERED that defendants' motion to transfer this case to the Southern District of New York be and it is hereby granted.

---

**10.** The scope of the precise coverage has been defined in various ways. See note 5, *supra.* *See also, Porter v. American Optical,* 641 F.2d 1128 (5th Cir.1981); *American Home Products Corp. v. Liberty Mutual Insurance Co.,* 565 F.Supp. 1485 (S.D.N.Y.1983).

**11.** This case also presents a difficult choice of law issue which has some bearing on this analysis. It is likely that New York law will have to be applied to the issues of this case. The benefit of having a local court construe its own law is a relevant factor in considering a transfer motion.

*See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Montsanto Co. v. United Gas Pipeline Co.,* 360 F.Supp. 1054 (D.D.C.1973). *See also, Hall v. E.I. DuPont De Nemours & Co.,* 345 F.Supp. 353 (S.D.N.Y. 1972). This consideration is properly given greater weight when the applicable state law is unclear. Wright, Miller & Cooper, *Federal Practice and Procedure* § 3854 at 296 (1976 and Supp.1985); *cf. Eli Lilly & Co. v. Home Insurance Co.,* 764 F.2d 876 (D.C.Cir.1985).